**Bernardino TORRES and Irma Torres, Plaintiffs,**

**v.**

**TOWMOTOR DIVISION OF CATERPILLAR, INC. and Foley Towlift Inc., Defendants.**

**No. 77 C 1810.**

United States District Court, E. D. New York.

Nov. 18, 1977.

Robert David Becker, New York City, for plaintiffs.

Francis R. O'Brien, Kirk, O'Connell & Cassara, Brooklyn, N. Y., for defendant Foley Towlift Inc.; Marie Vlahakis, Brooklyn, N. Y., of counsel.

## MEMORANDUM AND ORDER

BRAMWELL, District Judge.

The within matter comes before this Court by way of plaintiffs' contested motion seeking an order of attachment pursuant to section 6201 of the Civil Practice Laws and Rules.[1] In requesting the attachment of defendant Foley Towlift Inc.'s insurance policy for the sole purpose of obtaining quasi in rem jurisdiction under Rule 4(e) of the Federal Rules of Civil Procedure,[2] plaintiffs rely on *Seider v. Roth,* 17 N.Y.2d 111, 269 N.Y.S.2d 99, 216 N.E.2d 312 (1966), and its progeny.

---

[1]. Section 6201 of the Civil Practice Laws and Rules, Chap. 860, 1977 N.Y. Laws, sets forth the grounds for attachment and provides in pertinent part:

An order of attachment may be granted in any action, except a matrimonial action, where the plaintiff has demanded and would be entitled, in whole or in part, or in the alternative, to a money judgment against one or more defendants, when:

1. the defendant is a nondomiciliary residing without the state, or is a foreign corporation not qualified to do business in the state[.]

[2]. Section 4(e) of the Federal Rules of Civil Procedure provides:

*Same: Service Upon Party Not Inhabitant of or Found Within State.* Whenever a statute of the United States or an order of court thereunder provides for service of a summons, or of a notice, or of an order in lieu of summons upon a party not an inhabitant of or found within the state in which the district court is held, service may be made under the circumstances and in the manner prescribed by the statute or order, or, if there is no provision therein prescribing the manner of service, in a manner stated in this rule. Whenever a statute or rule of court of the state in which the district court is held provides (1) for service of a summons, or of a notice, or of an order in lieu of summons upon a party not an inhabitant of or found within the state, or (2) for service upon or notice to him to appear and respond or defend in an action by reason of the attachment or garnishment or similar seizure of his property located within the state, service may in either case be made under the circumstances and in the manner prescribed in the statute or rule.

An attachment order granted pursuant to *Seider* permits a New York plaintiff to assert quasi in rem jurisdiction over a non-resident defendant by attaching the defendant's insurer's contractual obligation to defend him against the resident plaintiff's claim. In *Seider,* such an obligation was deemed an attachable debt which is present in New York if the insurer does business in New York. The *Seider* procedure is usually employed when the nonresident defendant is not otherwise amenable to jurisdiction. Since it was recently held by the Supreme Court in the landmark decision of *Shaffer v. Heitner,* 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977) that the assertion of any jurisdiction, irrespective of its form, must comport with the minimum contacts test pronounced in *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), the question of the continued vitality of *Seider* based jurisdiction is thus squarely confronted. For the reasons to follow, the Court concludes that *Shaffer* mandates a denial of the attachment order requested herein and marks the demise of the jurisdictional attachment procedure condoned in *Seider* absent an additional showing that a nonresident defendant had minimum contacts with New York.

## FACTS

The plaintiffs in this action are residents of New York. On June 15, 1977, plaintiff Bernardino Torres was pursuing his regular employment for Republic Container Corporation in Jersey City, New Jersey. On that day, he was operating a fork lift truck manufactured by defendant Towmotor Division of Caterpillar, Inc. This truck had been purchased by plaintiff's employer from defendant Foley Towlift, Inc. (hereinafter "Foley") on August 18, 1976 and was later delivered to Republic in New Jersey on February 25, 1977. On the morning of June 15th, Foley had allegedly serviced this truck.

After completing his work assignment, plaintiff claims that he first placed the truck in neutral gear and then alighted from it. It is plaintiff's contention that while he was standing beside the unattended truck, it began to move and proceeded to roll over his foot causing him injuries which initially required hospital treatment in New Jersey and later required additional medical attention in New York. Plaintiff maintains that when an operator alights from the seat of this type of truck after it has been placed in neutral gear, the truck's ignition should automatically disconnect and its brakes should self-engage. Plaintiff claims that his injuries are a direct consequence of the failure of the truck in issue to function in this manner.

Mr. Torres subsequently commenced this diversity action seeking damages resulting from these injuries. Irma Torres, his wife, joined him as co-plaintiff in a claim for loss of his services. The claims against Towmotor Division of Caterpillar Inc. sound in negligence in manufacture, sale, design and failure to warn of a dangerous condition as well as in breach of express and implied warranties and strict liability in tort. The gravamen of plaintiffs' complaint against defendant Foley are negligence in sale, maintenance and service of the truck in issue, breach of express and implied warranties and strict liability in tort.

Defendant Towmotor Division of Caterpillar, Inc. is an Ohio Corporation that is authorized to do business in New York. Thus, there exists no jurisdictional problem as to them. Defendant Foley, however, is a New Jersey Corporation which is not authorized to do business in New York. Foley contends that not only does it not transact or do business in New York, it asserts that it has had no contacts with New York whatsoever. Nowhere have the plaintiffs asserted the existence of a relationship between defendant Towmotor Division of Caterpillar and Foley that would make Foley amenable to jurisdiction through the New York actions of Towmotor Division of Caterpillar, Inc. Plaintiffs base their request for an attachment order for jurisdictional purposes solely on the ground that Foley was issued a liability insurance policy by Liberty Mutual Insurance Company which maintains a business office in New York.

Since jurisdiction in this matter is based on diversity of citizenship, a federal court will normally follow the decisions of the highest court of the state in which it sits. *Erie R. R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). However, where a state court decision on the issue of jurisdiction is challenged as constitutionally infirm, the Court must be guided by the relevant decisions of the Supreme Court. *Aftanase v. Economy Baler Co.,* 343 F.2d 187, 192 (8th Cir. 1965) (Blackmun, J.); *see Arrowsmith v. United Press International,* 320 F.2d 219, 223 (2d Cir. 1963); *cf. Smayda v. United States,* 352 F.2d 251, 253 (9th Cir. 1965), *cert. denied,* 382 U.S. 981, 86 S.Ct. 555, 15 L.Ed.2d 471 (1966).

## THE DEVELOPMENT OF SEIDER v. ROTH

In order to decide the issue of the applicability of the Supreme Court's holding in *Shaffer* to the case at bar, it is necessary to examine the judicial development of the use of an order attaching the insurer's contractual obligations to defend and indemnify as a means of obtaining quasi in rem jurisdiction. The legal storm created by such a use of the attachment procedure [3] first appeared on the New York horizon in the 1966 Court of Appeals' decision in *Seider v. Roth.*

Over eleven years and numerous federal and state decisions later, *Seider's* dark clouds of confusion continue to loom large over New York law.

The *Seider* case entailed the propriety of the attachment of a Canadian motorist's liability insurance policy as a mechanism to obtain quasi in rem jurisdiction. The attached policy was issued by an insurer who did business in New York. The cause of action arose from injuries sustained by a New York resident in a Vermont automobile accident. In a four to three decision, the Court of Appeals held that in a personal injury action against a nonresident defendant, the defendant's insurer's contractual obligation to defend and indemnify was a "debt" owing to the defendant within the purview of C.P.L.R. §§ 5201 and 6202,[4] and, as such, was subject to attachment under C.P.L.R. § 6201. *Seider, supra* at 112, 216 N.E.2d at 313, 269 N.Y.S.2d at 100.

The constitutional issues circumvented in *Seider* were squarely presented to the Court of Appeals in *Simpson v. Loehmann,* 21 N.Y.2d 305, 234 N.E.2d 669, 287 N.Y.S.2d 633, (1967). There, plaintiff was unable to obtain personal jurisdiction over a Connecticut resident in an action for injuries sustained by a New York infant while boating in Connecticut waters. Therefore, the

---

**3.** In reference to this Court's characterization of *Seider* as creating a "legal storm", Judge Jasen's concurring observations in *Donawitz v. Danek,* 42 N.Y.2d 138, 366 N.E.2d 253, 397 N.Y.S.2d 592 are to be noted:

> *Seider,* thus, is out of line with the major precedents on attachment in this court. At least nine States and two Federal courts have rejected it. (See, e. g., *Javorek v. Superior Ct. of Monterey County,* 17 Cal.3d 629, 131 Cal.Rptr. 768, 552 P.2d 728). The only highest court of a sister State to apply the *Seider* rule limits its effect only to where a local resident commences an action against a New York resident. (*Forbes v. Boynton,* 113 N.H. 617, 313 A.2d 129; see *Robitaille v. Orciuch,* D.C., 382 F.Supp. 1977.) Critical commentary has been unfavorable.

*Donawitz, supra* at 148, 366 N.E.2d at 259, 397 N.Y.S.2d at 599, (Jasen, J., concurring).

**4.** The relevant statutes to a *Seider* attachment are CPLR 5201(a) and 6202. Section 5201(a) provides:

> Debt against which a money judgment may be enforced against any debt, which is past

due or which is yet to become due, certainly or upon demand of the judgment debtor, whether it was incurred within or without the state, to or from a resident or non-resident, unless it is exempt from application to the satisfaction of the judgment. A debt may consist of a cause of action which could be assigned or transferred accruing within or without the state.

N.Y.Civ.Prac.Law § 5201(a) (McKinney 1963). Section 6202 provides:

> Any debt or property against which a money judgment may be enforced as provided in section 5201 is subject to attachment. The proper garnishee of any such property or debt is the person designated in section 5201; for the purpose of applying the provisions to attachment, references to a "judgment" debtor in section 5201 and in subdivision (i) of section 105 shall be construed to mean "defendant."

N.Y.Civ.Prac.Law § 6202, Chap. 860, 1977 N.Y. Laws.

plaintiff obtained an ex parte order of attachment of defendant's insurance policy which was held with an insurance company doing business in New York. The Connecticut defendant strenuously objected to the contention that quasi in rem jurisdiction had thereby been properly required, urging, *inter alia,* that this procedure offended due process. In rejecting this contention, the Court of Appeals relied on the then settled authority of *Harris v. Balk,* 198 U.S. 215, 25 S.Ct. 625, 49 L.Ed. 1023 (1905):

> It was our opinion when we decided *[Seider],* and it still is, that jurisdiction in rem was acquired by the attachment in view of the fact that the policy obligation was a debt to the defendant. *And we perceive no denial of due process since the presence of that debt in this State (see, e. g., Harris v. Balk)* —contingent or inchoate though it may be—represents sufficient of a property right in the defendant to furnish the nexus with, and the interest in, New York to empower its courts to exercise an in rem jurisdiction over him. It is, of course, hardly necessary to add that neither the *Seider* decision nor the present one purports to expand the basis for in personam jurisdiction in view of the fact that the recovery is necessarily limited to the value of the asset attached, that is, the liability insurance policy.

*Simpson, supra* at 310, 234 N.E.2d at 671, 287 N.Y.S.2d at 636 (emphasis added and citations omitted).

The decision of *Harris v. Balk, supra* marked the birth of the strain of quasi in rem jurisdiction employed in *Seider.* In *Harris, supra* at 227, 25 S.Ct. 625, the Supreme Court held that the situs of a debt follows the debtor and is subject to garnishment wherever the debtor may be found.[5] Prior to *Shaffer,* it was uncontroverted that this was the test for the assertion of this class of quasi in rem jurisdiction and, ac-

cordingly, no assertion of the defendant's minimum contacts with the forum was necessary. Adhering to *Seider's* conclusion that jurisdiction could be properly based on the presence of the insured's debt in New York, the *Simpson* Court relied on the continued constitutional validity of *Harris.*

It is to be noted, however, that the Court's affirmance of *Seider* was not without an awareness that future legal developments might compel an antithetic determination to the one then reached in *Simpson.* In concluding its opinion, the *Simpson* Court stated:

> Absent new data suggesting the desirability of a departure from the general principles underlying in rem jurisdiction, as reflected in *Seider,* we find neither basis nor justification for departing from our holding in that case.

*Simpson, supra* at 312, 234 N.E.2d at 672–73, 287 N.Y.S.2d at 638.

In concurring with the majority, Judge Breitel did not reach the constitutional issues posed. Instead, in an apparently begrudged opinion in which Judge Bergan concurred, Judge Breitel affirmed *Seider* "only because the institutional stability of a court is more important than any single tolerable error which I believe it has committed." *Simpson, supra* at 316, 287 N.Y.S.2d at 642, 234 N.E.2d at 675. In so holding, Judge Breitel stated:

> Only a major reappraisal by the court, rather than the accident of a change in its composition, would justify the overruling of *[Seider].* Yet the theoretical unsoundness of the *Seider* case and the undesirable practical consequences of its rule require some comment if only, perhaps, to hasten the day of its overruling or its annulment by legislation.

*Simpson, supra* at 314, 234 N.E.2d at 674, 287 N.Y.S.2d at 640 (Breitel, J., concurring).

---

5. More specifically, the Court in *Harris* stated:

> [I]f there be a law of the State providing for the attachment of the debt, then, if the garnishee be found in that State, and process be personally served upon him therein, we think the court thereby acquires jurisdiction over him, and can garnish the debt due from him to the debtor of the plaintiff, and condemn it, provided the garnishee could himself be sued by his creditor in that State.
> *Harris, supra* 198 U.S. at 222, 25 S.Ct. at 626.

Soon after the New York Court's decision in *Simpson,* the overcast of *Seider* enveloped the federal courts. *Minichiello v. Rosenberg,* 410 F.2d 106 (2d Cir. 1968), adhered to *en banc,* 410 F.2d 117 (2d Cir.), *cert. denied,* 396 U.S. 844, 90 S.Ct. 69, 24 L.Ed.2d 94 (1969), involved two cases in which the nonresident defendants argued that the attachment of their insurance policies pursuant to *Seider* was an unconstitutional assertion of jurisdiction. Although the Second Circuit upheld the constitutionality of *Seider,* its welcome of that decision into the realm of judicial precedent was marred by an apparent reluctance. Initially, the Second Circuit took note of the unfavorable reception that *Seider* had received from the legal community and went on to note Judge Breitel's unenthusiastic remarks in his concurring opinion in *Simpson. Minichiello, supra* at 108–109. In upholding *Seider,* the Second Circuit focused on New York's interest in protecting its residents. The Court concluded that the guarantee of due process was not jeopardized and that the security of a contractual obligation was not impaired by use of the *Seider* procedure. *Minichiello, supra* at 113.

It is clear from a reading of *Minichiello,* however, that the underpinnings of that decision rested upon the then existing judicial precedent regarding the assertion of quasi in rem jurisdiction. Following a reconsideration *en banc* of the defendant's claim that compelling him to defend an action in New York solely because his liability insurer does business there is violative of due process, the Court stated, "[w]e *find this argument unpersuasive so long as Harris v. Balk stands." Minichiello, supra* at 118 (emphasis added and citations omitted).

The thrust of Judge Anderson's vigorous dissent from the panel decision was that such an assertion of jurisdiction without an additional showing of contacts by the defendant with the forum contravenes due process:

[I]t must first be determined whether the plaintiff has the right to require defendant's presence in plaintiff's forum and the resolution of this question depends upon the fairness and reasonableness of the device as it affects all of the parties involved, the functioning of the courts, and the administration of justice in such an action. *Watson* [*v. Employee's Liability Assurance Corp.,* 348 U.S. 66, 75 S.Ct. 166, 99 L.Ed. 74 (1954)] and the long-arm statutes are plainly grounded in fairness because the nonresident defendant has of his own volition brought himself within the bounds and jurisdiction of the state where the accident occurred. But, for example, for a resident of Alaska, as the accident state, who had never resided elsewhere and who had never entered the State of New York or had any business there, suddenly to discover that he is under the jurisdiction of the State of New York and must go there to defend himself is quite a different matter. . . .

The legislatures which have enacted long-arm statutes and courts which have interpreted them have been motivated and restrained by considerations of fairness and reasonableness. In deciding the due process issue, as it relates to the *Seider* procedure, "traditional notions of fair play and substantial justice," *International Shoe Co. v. Washington,* must be used to determine whether or not it falls within permissible bounds. Weighed in this light, it seems to me that only the long-arm statutes asserting jurisdiction of the state where the accident occurred qualify as due process whereas the assertion of jurisdiction by the state of the plaintiff's residence does not.

*Minichiello, supra* at 115–116 (Anderson, J., dissenting) (footnotes and citations omitted). In response to the majority's dependence on *Harris,* Judge Anderson stated:

The rule of *Harris* which in effect sanctions the mere presence of the garnishee as a sufficient jurisdictional base "cannot be justified in terms of fairness." In other words, the relevant contact with the forum state which establishes a jurisdictional base is not attuned to the modern jurisdictional search to attain substantial justice by balancing interests.

*Minichiello, supra* at 122, (Anderson, J., dissenting) (citations omitted).

In *Farrell v. Piedmont Aviation, Inc.,* 411 F.2d 812 (2d Cir.), *cert. denied,* 396 U.S. 840, 90 S.Ct. 103, 24 L.Ed.2d 91 (1969), the Second Circuit was faced with "the latest fallout to reach this court from the much criticized decision in *Seider v. Roth* . . . ." *Farrell, supra* at 813. There, the Court held that a *Seider* attachment was only available to New York residents or in causes of action arising from New York accidents because of the constitutional doubt which otherwise arises from "New York's lack of meaningful contact with the claim." *Farrell, supra* at 817.

In 1976, the New York Court of Appeals was encumbered with another attack on their *Seider* decision. In a perfunctory opinion that may generously be termed as brief, the Court confined its affirmance of *Seider* to "the ground of *stare decisis* alone." *Neuman v. Dunham,* 39 N.Y.2d 999, 355 N.E.2d 294, 387 N.Y.S.2d 240 (1976). A year later, in *Donawitz v. Danek,* 42 N.Y.2d 138, 366 N.E.2d 253, 379 N.Y.S.2d 592 (1977), the Court was again engulfed by the haze cast by *Seider* with the question of whether *Seider* should be extended to cases where both of the parties are nonresidents. In denying the application of a *Seider* attachment on these facts, the Court stated at the onset of an opinion which contained a significant lack of enthusiastic support for *Seider* that:

> [W]e are not unmindful of the continued criticism of our holdings in *Seider v. Roth* and *Simpson v. Loehmann.* Although several members of the court may believe in the legitimacy of some of this criticism the majority cannot fail to take into account considerations of institutional stability and the mandates of *stare deci-*

sis. A court should not depart from its prior holdings "unless impelled by 'the most cogent reasons' ".

As recently as July of last year, this court unanimously reaffirmed the *Seider-Simpson* doctrine (*Neuman v. Dunham*) and it would be scandalous for us to abandon it at this time, particularly in this case where the doctrine need not be applied. Moreover, as the *Seider* court itself recognized, its holding in effect established, by judicial fiat, a direct action against the insurer. Thus, this court did indirectly that which the legislature could have done, but failed to do, directly. In the absence of any corrective measures taken by the legislature during the 11-year history of the *Seider-Simpson* rule, it must be concluded that they are satisfied with it, and we, therefore, should refrain from disavowing it.

Although *stare decisis* dictates that we refrain from unnecessarily reaching out to overrule the precedents established by *Seider* and *Simpson,* it does not require that we expand the scope of the doctrine. *Donawitz, supra* at 142, 366 N.E.2d at 255–56, 397 N.Y.S.2d at 594 (citations omitted).[6]

In his concurring opinion, Judge Jasen questioned the constitutionality of the majority's holding and stated that the "time for a major reappraisal of the abberrational [*sic*] *Seider* decision [had] come." *Donawitz, supra* at 143, 366 N.E.2d at 256, 397 N.Y.S.2d at 596 (Jasen, J., concurring). He opined that "the lid on this Pandora's box" should be closed, and *Seider* thereby should be overruled. *Donawitz, supra* at 143, 147, 366 N.E.2d at 256, 259, 397 N.Y.S.2d at 596, 598 (Jasen, J., concurring). Significantly, Judge Jasen addressed the Court's

---

**6.** In response to the *Donawitz* majority's reference to the fact that the New York Legislature did not adopt any corrective measures pertaining to a *Seider* attachment, Judge Jasen replied that:

> [T]he Legislature did attempt to enact a "direct action" statute, in lieu of *Seider,* but the proposed enactment was vetoed by the Governor. (See Governor's veto message, N.Y. Legis.Ann., 1973, p. 349.) Since the Legislature would have repealed *Seider* but for the Governor's veto (which was based on a draft-

ing deficiency and not upon the merits of the legislation), the majority's conclusion that the Legislature is "satisfied with it" [366] N.E.2d p. [256] [397] N.Y.S.2d p. [595] is simply untenable. But, in any case, it is my view that a court may, and should, rectify prior error in statutory interpretation and should not place the burden upon the Legislature to redraft the statute.

*Donawitz, supra* at 149, 366 N.E.2d at 260, 397 N.Y.S.2d at 600 (Jasen, J., concurring).

previous reliance on *Harris* as a basis of validity for a *Seider* attachment.

Although, in modern times, the view has been expressed that due process is denied a defendant who must defend in a foreign State simply because his garnishee happened to be found there, *Harris remains as of today, an authoritative precedent. Until such time as the Supreme Court chooses to overrule it, and that time may not be far off, State courts are bound by it.*

*Donawitz, supra* at 146–47, 366 N.E.2d at 258, 397 N.Y.S.2d at 598.

Indeed Judge Jasen's prophesy that the foundation of quasi in rem jurisdiction as enunciated in *Harris* would soon be shaken by the tremors of due process proved true. Ten days after *Donawitz,* the Supreme Court rendered its decision in *Shaffer v. Heitner,* 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977).

## THE SHAFFER DECISION

Much to the surprise of the bench and the bar, after re-examining the basis of rem and quasi in rem jurisdiction, in *Shaffer v. Heitner* the Supreme Court concluded that a state's assertion of *any* form of jurisdiction must be evaluated according to the minimum contacts test emphasized in *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). *Shaffer, supra* at 211, 97 S.Ct. at 2584. Indeed, *Shaffer* is the landmark case which must be seen as providing the "new data suggesting the desirability of depart[ing] from the general principles underlying in rem jurisdiction as reflected in *Seider* . . .." *Simpson, supra* at 312, 234 N.E.2d at 672–73, 287 N.Y.S.2d at 638.

In *Shaffer,* plaintiff-appellee was a nonresident of Delaware who filed a shareholder's derivative suit in Delaware against Greyhound, Greyhound Lines, Inc., and twenty-eight present and former officers or directors of these corporate defendants. Plaintiff's derivative suit was based on an alleged breach of fiduciary duties. Since the individual defendants were nonresidents of Delaware, the plaintiff moved for an order of sequestration pursuant to 10 Del. Code § 366 for the purpose of obtaining quasi in rem jurisdiction.[7] In his moving papers, the plaintiff identified the property to be sequestered as stock, options, and various corporate rights belonging to the individual defendants. By virtue of 8 Del. Code § 169, the situs of the stock was deemed to be in Delaware and thus subject to seizure there. Since the plaintiff was proceeding upon the traditional basis of quasi in rem jurisdiction as typified by *Harris v. Balk, supra,* he did not allege any contacts by the defendants with the forum state.

The order was granted on the day of its request, and, consequently, many shares of stock and two options belonging to twenty-one of the defendants were seized by the sequestrator. The defendants affected by this seizure objected to its propriety claiming that, as applied to them, the Delaware sequestration statute was violative of the Due Process Clause of the Fourteenth Amendment. More specifically, like the defendants in *Simpson* and *Minichiello,* they argued that the statute permitted state courts to exercise jurisdiction notwithstanding the nonresident defendants' lack of significant contacts with the state. They further contended that the statute lacked adequate procedural safeguards. Like the New York Courts and the Second Circuit, the Delaware Courts rejected both of these contentions and affirmed the order.

The Supreme Court, however, reversed on the basis of the defendants' first argument. In the course of its opinion, the Court discussed the concepts of in rem and quasi and in rem jurisdiction.[8]

---

**7.** It is to be noted that the Delaware sequestration statute at issue in *Shaffer* was modeled after the Delaware attachment statute. *Shaffer, supra* at 194, 97 S.Ct. at 2575 n.10. Thus, *Shaffer's* discussion as to quasi in rem jurisdiction is particularly on point in the instant case.

**8.** As employed by the *Shaffer* Court:

"A judgment *in rem* affects the interests of all persons in designated property. A judgment *quasi in rem* affects the interests of particular persons in designated property. The latter is of two types. In one the plain-

If a court's jurisdiction is based on the court's power over property within its territory, the action is called "in rem" or "quasi in rem." The effect of a judgment in such a case is limited to the property that supports jurisdiction and does not impose a personal liability on the property owner, since he is not before the court.

*Shaffer, supra* at 198, 97 S.Ct. at 2577 (footnotes omitted). After discussing the historical basis of the various forms of jurisdiction, the Court focused on the minimum contacts test stressed in *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945):

"But now that the *capias ad respondendum* has given way to personal service of summons or other form of notice, due process requires only that in order to subject a defendant to a judgment *in personam,* if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' *Milliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 343, 85 L.Ed. 278."

*Shaffer, supra* at 204, 97 S.Ct. at 2580. The Court further stated that whether a nonresident defendant can be compelled to defend in the forum depends on the existence of

such contacts of the . . . [defendant] with the state of the forum as to make it reasonable, in the context of our federal system of government, to require the . . . [defendant] to defend the particular suit which is brought there.

*Id., quoting International Shoe Co., supra* at 317, 66 S.Ct. 154. The Court then noted that whether such contacts exist as will satisfy the due process requirement

depend[s] . . . upon the quality and nature of the activity in relation to the fair and orderly administration of the laws which it was the purpose of the due process clause to insure. That clause does not contemplate that a state may make binding a judgment *in personam* against an individual or corporate defendant with which the state has no contacts, ties or relations.

*Shaffer, supra* at 204, 97 S.Ct. at 2580, *quoting International Shoe, Co., supra* at 319, 66 S.Ct. 154.

■ After an extensive discussion of this test, the Court set forth the directive that hereinafter the minimum contacts test is to be applicable to assertions of quasi in rem and rem jurisdiction as well as to personal jurisdiction. *Shaffer, supra* at 207, 97 S.Ct. at 2581–82. Therefore, in order for a state to presently assert quasi in rem jurisdiction, it must first be proved that the nonresident defendant has contacts, ties, or relations with the forum state so that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice."

The Court premised its application of this test to in rem and quasi in rem jurisdiction on the ground that a proceeding against the property is a mere subterfuge for a proceeding against the owner of the property. As stated by the Court, such proceedings are "customary elliptical way[s] of referring to jurisdiction over the interests of persons in the thing." *Shaffer, supra* at 206, 97 S.Ct. at 2581, *quoting* Restatement (Second) of Conflict of Laws § 56, introductory note. The Court further observed that application of the minimum contacts test to cases involving pure in rem jurisdiction will not present jurisdictional problems as in these cases, minimum contacts are likely to exist. *Shaffer, supra* at 207, 97 S.Ct. at 2582.

tiff is seeking to secure a pre-existing claim in the subject property and to extinguish or establish the nonexistence of similar interests of particular persons. In the other the plaintiff seeks to apply what he concedes to be the property of the defendant to the satisfaction of a claim against him. Restatement, Judgments, 5–9." *Hanson v. Denckla,* 357 U.S.

235, 246 n.12, 78 S.Ct. 1228, 1235, 2 L.Ed.2d 1283.

As did the Court in *Hanson,* [the Court], for convenience generally use[d] the term "in rem" in place of "in rem and quasi in rem." *Shaffer, supra* at 194, 97 S.Ct. at 2577–78 n.17.

However, the Court noted that employment of the minimum contacts test will have a significant impact on quasi in rem actions "typified by *Harris v. Balk* and the present case" as

> [t]hese are cases where the property which now serves as the basis for state court jurisdiction is completely unrelated to the plaintiff's cause of action. Thus, although the presence of the defendant's property in a State might suggest the existence of other ties among the defendant, the State, and the litigation, *the presence of the property alone would not support the State's jurisdiction. If those other ties did not exist, cases over which the state is now thought to have jurisdiction could not be brought in that forum.*

*Shaffer, supra* at 207, 97 S.Ct. at 2582 (emphasis added). It is thus clear that *Harris* rooted quasi in rem jurisdiction must undergo the scrutiny of the minimum contacts test before its assertion can be designated as valid.

## SEIDER AS A DIRECT ACTION

[3] While plaintiffs did not specifically address the question of whether *Seider* remains constitutionally valid, notwithstanding *Shaffer*, in the guise of a direct action suit against the insurer, the Court is of the opinion that this issue must be confronted. *See O'Connor v. Lee Hy Paving*, 437 F.Supp. 994 (E.D.N.Y.1977). This Court does not find that a *Seider* attachment can be severed from its *Harris* roots and maintain continued viability absent *Harris'* nourishment.

It is true that in *Minichiello*, the Second Circuit surmised that the New York Courts viewed *Seider* as "*in effect* a judicially created direct action statute." *Minichiello, supra* at 109 (emphasis added).[9] Similarly, it is also true that in the Court of Appeals' reluctant affirmance of *Seider* in *Donawitz*, it was noted that *Seider* "*in effect* established by judicial fiat, a direct action against the insurer." *Donawitz, supra* at 142, 366 N.E.2d at 255, 379 N.Y.S.2d at 595 (emphasis added). Apparently interpreting the Court's statement to be contrary to its previous holdings in *Seider* and *Simpson*, Judge Jasen noted in his concurring opinion that:

> [c]ontrary to the implication in the majority opinion, we have never said that *Seider* was, in fact, a judicially created direct action statute. The statements to which the majority alludes were made in response to arguments that *Seider* represented an arrogation of legislative responsibility. We specifically noted in *Seider* that the direct action analogy was a limited one and that jurisdiction was obtained because the policy obligation to defend and indemnify should be considered a debt owed to the insured by the insurer. (*Seider v. Roth*, 17 N.Y.2d 111, 114, 216 N.E.2d 312, 315, 269 N.Y.S.2d 99, 102, *supra*; see, also, *Simpson v. Loehmann*, 21 N.Y.2d 305, 311, 234 N.E.2d 669,

9. After noting that *Seider* "in effect" created a direct action against the insurer, the majority in *Minichiello* went on to discuss *Watson v. Employer's Liability Assurance Corp.*, 348 U.S. 66, 75 S.Ct. 166, 99 L.Ed. 74 (1954) as authority for the proposition that a direct action against the insurer would be constitutional. *Watson* involved the assertion of Louisiana's direct action statute against a nonresident defendant. In response to the majority's contention, Judge Anderson pointed out that the significant fact in *Watson* which directly supported the Supreme Court's finding of constitutionality in that case was that the defendant was engaged in interstate commerce, the claim was for injuries from a product bought and used in Louisiana and the plaintiff's injury occurred in Louisiana. *Minichiello, supra* at 114–115. (Anderson, J., dissenting). Further, in response to the majority's observation that such a direct action would be constitutional, Judge Anderson further noted that

> [a] weighing of interests leads to the conclusion that a direct action statute purporting to provide a New York forum for a New York plaintiff, regardless of other local contacts or considerations, is unreasonable and parochial in the due process sense. It is one thing to require a resident of Alaska to make trips to New York to respond to an action arising out of an accident with a resident of New York in New York state to which the Alaskan had gone, and quite another to make him do so for an accident which occurred in Alaska when the New Yorker elected to go to Alaska and use its highways.

*Minichiello, supra* at 117 (Anderson, J., dissenting).

672, 284 N.Y.S.2d 633, 637, *supra*.) Judicial creation of a direct action statute is a contradiction in terms. Courts do not, or at least should not, legislate. *Donawitz, supra* at 147, 366 N.E.2d at 259, 397 N.Y.S.2d at 598 (Jasen, J., concurring). In a separate opinion in which Judge Fuchsberg concurred, Judge Cooke agreed that *Seider* does not constitute a direct action suit. *Donawitz, supra* at 152, 366 N.E.2d at 262, 397 N.Y.S.2d at 602. (Cooke, J., dissenting).

However, the use of the term "direct action" in both *Minichiello* and *Donawitz* is not at odds with this Court's holding herein. Indeed, the *Minichiello* Court noted that *Seider* was unlike a direct action because it involved the nonresident insured as a defendant. *Minichiello, supra* at 109. Further, in using that term, neither Court categorically stated that *Seider* did create a "direct action" suit. No such absolute words were used. Both Courts qualified the use of this term by stating that *Seider* had only "in effect" established a direct action against the insurer. It is not controverted that this, indeed, was the *effect* of an assertion of quasi in rem jurisdiction through attachment of the insurer's contractual obligation to the defendant. However, this effect only resulted once quasi in rem jurisdiction was validly established.

Since both *Minichiello* and *Donawitz* affirmed *Seider*, in answering the assertion that *Seider* can continue to independently exist as a direct action against the insurer in light of *Shaffer*, the *Seider* decision itself must be examined. In *Seider*, the New York Court of Appeals clearly rejected the contention that their decision established a direct action against the insurer. In response to the advancement of this suggested interpretation, the Court stated that *Seider* created a direct action

> to the extent *only* that affirmance will put jurisdiction in New York State and require the insurer to defend here, not because a debt owing by it to the defend-

ant has been attached but because by its policy *it has agreed to defend in any place where jurisdiction is obtained against its insured. Jurisdiction is properly acquired by this attachment since the policy obligation is a debt owed to the defendant by the insurer,* the latter being regarded as a resident of this State.

*Seider, supra* at 114, 216 N.E.2d at 315, 269 N.Y.S.2d at 102. (Emphasis added). This rationale was directly quoted in *Simpson* when the same interpretation of *Seider* was again urged and rejected. *Simpson, supra* at 311, 234 N.E.2d at 671–72, 287 N.Y.S.2d at 637. Moreover, when the *Donawitz* Court stated that *Seider* "in effect . . . established a 'direct action' ", *Donawitz, supra* at 142, 366 N.E.2d at 255, 397 N.Y.S.2d at 594, the Court also referred to this disclaiming paragraph in *Seider* as its authority. Surely, then, had the Court of Appeals intended a *Seider* attachment to constitute a direct action against the insurer, it clearly would have said so rather than consistently disavowing any such intent.

Thus, according to the *Seider* Court's own construction of the applicability of the term "direct action" to their holding, in order for a "direct action" in any sense to come into existence, some recognized form of jurisdiction must first be acquired. As previously noted, the New York Courts have consistently held that a *Seider* attachment is predicated on a constitutional assertion of the *Harris* mode of quasi in rem jurisdiction.[10] This Court is not at liberty to change that basis. Thus, if jurisdiction cannot be constitutionally acquired in this manner, it cannot be said that the insurer agreed to defend in that forum. Accordingly, the "direct action" emanating from *Seider* is an "effect" of *Seider* only after quasi in rem jurisdiction has been validly acquired. *Seider,* therefore, does not purport to create a direct assertion of jurisdiction over the insurer.

---

**10.** As noted by Judge Breitel in his concurrence in *Simpson*, the Court in *Seider* "could not have decided the substantive question without assuming a reality in the 'obligation' being attached that would satisfy constitutional standards." *Simpson, supra* at 316, 234 N.E.2d at 671, 287 N.Y.S.2d at 642 (Breitel, J., concurring).

The distinction between the actual creation of a direct action against the insurer and a decision which only incidently has such an effect after a valid acquisition of jurisdiction is crucial to the disposition of the quasi in rem procedure attacked herein.[11] If a direct action procedure had been specifically created, no problem would exist as to quasi in rem jurisdiction since the plaintiff would proceed directly against the insurer. If the insurer did business in New York, minimum contacts would exist, and the *International Shoe* criterion would thus be satisfied. However, since *Seider* and its progeny only have the effect of a direct action after jurisdiction over the defendant's property has been validly acquired, the defendant remains the focus of the minimum contacts examination. Since *Shaffer* mandates the application of the minimum contacts test to quasi in rem jurisdiction, if there exists an absence of such contacts, there can be no valid assertion of jurisdiction. Consequently, the direct action "effect" cannot come into existence. Thus, for a *Seider* attachment to continue to exist, it must do so as a species of quasi in rem jurisdiction, and, thus, must exist within the framework created by the *Shaffer* decision.

## THE EFFECT OF SHAFFER ON SEIDER

As has been noted in detail, both *Seider* and *Simpson* predicated the attachment of an insurer's obligation to defend and indemnify on the previously secure quasi in rem jurisdiction typified by *Harris v. Balk. Seider, supra* at 112, 216 N.E.2d at 313, 269 N.Y.S.2d at 100; *Simpson, supra* at 310, 234 N.E.2d at 671, 287 N.Y.S.2d at 636. Similarly, *Minichiello* found the lack of min-

imum contacts argument "unpersuasive so long as *Harris v. Balk* stands." *Minichiello, supra* at 118 (citation omitted). However, *Shaffer's* holding that minimum contacts by the defendant are a prerequisite for the assertion of quasi in rem jurisdiction spurns the *Harris* maxim that jurisdiction may be validly asserted solely on the ground that the attachable property is within the forum's jurisdiction.

After pronouncing its holding that the minimum contacts test applies to assertions of quasi in rem jurisdiction, the Court stated:

> [I]t would not be fruitful for us to re-examine the facts of cases decided on the rationales of *Pennoyer* [*v. Neff*, 95 U.S. 714, 24 L.Ed. 565] and *Harris* to determine whether jurisdiction might have been sustained under the standard we adopt today. *To the extent that prior decisions are inconsistent with this standard, they are overruled.*

*Shaffer, supra* at 212, 97 S.Ct. at 2585 n.39 (emphasis added). It is thus clear that in the absence of significant contacts between the defendant and the forum, the prototype of *Harris* quasi in rem jurisdiction must fall by the wayside.

At this juncture, it is to be noted that the *Shaffer* Court's holding did not turn on the fictional situs of the stock as designated by the Delaware statute.[12] Further, the Court's holding neither rested on nor stressed the fact that the plaintiff therein was a nonresident of Delaware. *Cf., Donawitz, supra* (plaintiff's nonresidency was basis for denying *Seider* type attachment). Instead, the *Shaffer* Court choose to rest its decision on the all-encompassing ground that any assertion of jurisdiction, irrespec-

---

11. In reference to an actual creation of a direct action statute, Judge Anderson significantly stated that

    the *Seider* result could not have been reached under either of the legislatively-created direct action statutes, which permit a direct action only if the accident occurs within the state. Wis.Stat.Ann. § 260.11 (Supp.1966); La.Rev. Stat.Ann. § 22.655 (Supp.1965); *Koss v. Hartford Acc. & Indem. Co.*, 341 F.2d 472 (7 Cir. 1965) (Wisconsin statute); *Guess v.*

*Read*, 290 F.2d 622 (5 Cir. 1961), cert. denied, 368 U.S. 957, 82 S.Ct. 394, 7 L.Ed.2d 388 (1962) (Louisiana statute); *Honeycutt v. Indiana Lumbermens Mut. Ins. Co.*, 130 So.2d 770 (La.Ct.App.1961) (Louisiana statute).
    *Minichiello, supra* at 116 n.5 (Anderson, J., dissenting).

12. In this respect, it is to be noted that like the Delaware situs statute, in a *Seider* attachment procedure the attachment occurs whether or not the policy is actually located in New York.

tive of the residence of the plaintiff or the basis for the situs of the property, must comport with the minimum contacts mode of analysis.

Similarly, the fact that in a *Seider* attachment, the liability of the nonresident defendant is limited to the value of the insurance policy does not save an assertion of *Seider* jurisdiction from falling within the condemning shadows of *Shaffer*. *See Simpson, supra* at 310, 287 N.Y.S.2d at 637, 234 N.E.2d at 671. As noted by the *Shaffer* Court, such a limit neither supports jurisdiction, *Shaffer, supra* at 209, 97 S.Ct. at 2583 n.32, nor does the fundamental issue of jurisdictional fairness depend on the size of the claim litigated, *id.* at 209, 97 S.Ct. at 2582 n.23.

■ Before this Court can categorically reject the attachment requested based on the demise of *Seider, Shaffer* mandates that the Court inquire into the possibility that minimum contacts exist in the instant case. After an examination of the facts as presented to the Court in the parties moving papers and during oral argument, it appears that the only nexus that this action has with New York is that the nonresident defendant injured a person in New Jersey who happens to be a New York resident. Nowhere in plaintiffs' brief or during oral argument was it asserted the Foley has had any contacts with New York. The accident at the core of the controversy allegedly occurred in New Jersey where the plaintiff is employed. The underlying alleged tortious conduct is not claimed to have occurred in New York. The allegedly defective truck was sold and delivered to plaintiffs' employer in New Jersey. Defendant's place of business is in New Jersey, and there is no assertion that its business was ever carried on outside the borders of that state. Thus, there exists a total absence of any contacts by the defendant with the forum unless the presence of the contractual obligation in New York, New York's interest in protecting its residents, the fact that defendant's insurer does business in New York, or the act of entering into an insurance contract with an insurer who does

business in New York constitute, either alone or in the aggregate, minimum contacts upon which jurisdiction can be constitutionally predicated.

In discussing the application of the minimum contacts test to quasi in rem jurisdiction, the *Shaffer* Court noted that the mere presence of the property within the forum may provide sufficient contacts with the forum to satisfy the *International Shoe* criterion. *Shaffer, supra* at 207, 97 S.Ct. at 2582. However, the Court further stated that in *Harris* type jurisdiction cases, "the presence of the property alone would not support the State's jurisdiction" because the property is neither the subject matter of nor is it related to the underlying cause of action. *Shaffer, supra* at 207, 97 S.Ct. at 2582. In *Shaffer*, the sequestered property fell into this category, and, as no other contacts by the defendant with the forum were proved, the Court refused to sustain quasi in rem jurisdiction.

Similarly, in a *Seider* predicated attachment, the property attached is neither the subject matter of the litigation nor is it related to the underlying cause of action. In these cases, the subject matter of the litigation is the plaintiff's claim for personal injuries and the underlying cause of action is the defendant's alleged negligence. Clearly, a plaintiff's claims of injuries and negligence exist separate and apart from a contract of insurance between the defendant and his insurer, just as the *Shaffer* plaintiff's claims existed separate and apart from the defendants' stock in a Delaware corporation. *Shaffer, supra* at 214, 97 S.Ct. at 2586. Like the stock sequestered in *Shaffer*, the only role played by the debt in a *Harris* type case and thus in a *Seider* attachment is to provide a basis for jurisdiction. *Shaffer, supra* at 209, 97 S.Ct. at 2583. It has no real relationship to the litigation, and, thus, the presence of the property in the jurisdiction, without more, does not support an assertion of jurisdiction. *Id.* at 207, 97 S.Ct. at 2582.

In support of New York's assertion of *Seider* jurisdiction, courts have repeatedly noted New York's interest in protecting its

plaintiffs and medical creditors. This Court agrees that this is a valid judicial concern. However, just as Delaware's interest in supervising the management of a Delaware corporation was not deemed sufficient for the assertion of jurisdiction in *Shaffer, supra* at 213–214, 97 S.Ct. at 2585–86, New York's interest also is not a sufficient basis for jurisdiction here. In both instances, due process considerations rise above the recognition of these interests. As noted by the *Shaffer* Court, such interests are relevant in determining the choice of law, but the mere fact of their existence is not tantamount to jurisdiction. *Shaffer, supra* at 211, 97 S.Ct. at 2584, 2586. Moreover, New York's interest cannot be designated as a "contact" for the purposes of the minimum contact analysis, as the contacts referred to therein are the defendant's contacts with the forum and the litigation, not the forum's concerns with protecting its residents.

In an assertion of jurisdiction pursuant to *Seider,* the only factor taken into consideration is that the defendant's insurer does business in New York. After *Shaffer,* however, such a "contact" is an insufficient basis to support a constitutional assertion of jurisdiction. In applying the *International Shoe* criterion, the *Shaffer* Court did not consider Greyhound's incorporation in Delaware to be sufficient to sustain quasi in rem jurisdiction as to the individual defendants. *See Shaffer, supra* at 213, 97 S.Ct. at 2585. Similarly, the mere fact that a nonresident defendant's insurer does business in New York is also insufficient to sustain quasi in rem jurisdiction as to the nonresident defendant. Moreover, the *Shaffer* Court did not examine the contacts of the corporation of which the defendants were officers or directors in order to bootstrap an assertion of jurisdiction. Instead, the Court focused solely on the existence of contacts between the individual defendants and the forum. *Shaffer, supra* at 214, 97 S.Ct. at 2586.

Similarly, in the instant case, the Court must look to the nonresident defendant's contacts with New York, not his insurer's contacts with New York, as it is the nonresident, not the insurer, who is the defendant herein.[13] It is the nonresident defendant who allegedly committed the tortious act, and it is the nonresident defendant who is primarily liable to the plaintiff. If the defendant is ultimately found liable, and if he does not compensate the plaintiff for his injuries, the plaintiff will enforce his judgment against the defendants' property, not his insurer's property. It is undisputed that a defendant pays his insurer valuable consideration for a contract that states it will defend and indemnify him. It is the insurance contract, the defendant's property, that is affected by an attachment order.[14] At this point it is also to be noted that the defendant's involvement in the ensuing litigation cannot be summarily dismissed as inconsequential. The right to participate in one's own defense

> is the right conservative of all other rights and lies at the foundation of orderly government. It is one of the highest and most essential privileges of citizenship, and must be allowed by each state to the citizen of all other states . . .

*Chambers v. Baltimore & Ohio R.R.,* 207 U.S. 142, 148, 28 S.Ct. 34, 35, 52 L.Ed. 143 (1907).

Additionally, it cannot be reasonably argued that by entering into a contract of insurance with a company doing business in New York, a nonresident defendant thereby explicitly or impliedly consents to have the insurance company's New York contacts imputed to him. Similarly, it cannot be argued that such an act constitutes a "contact" sufficient for the assertion of jurisdic-

**13.** Jurisdiction in the instant case cannot be sustained on the basis of *McGee v. International Life Ins. Co.,* 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957). There, the insurance contract itself was the subject matter of the controversy, and the insurance company itself was being directly sued on that contract.

**14.** In this respect, as Judge Jasen noted, if the defendant fails to cooperate with his insurer in presenting a defense, the insurer has the option of disclaiming coverage. *Donawitz, supra* at 147, 366 N.E.2d at 259, 397 N.Y.S.2d at 598 (Jasen, J., concurring).

tion. In response to a similar but much stronger argument that by accepting positions as officers and directors and by purchasing stock in a Delaware corporation the *Shaffer* defendants performed acts which were sufficient for an assertion of Delaware jurisdiction, the *Shaffer* Court replied that such an argument "strains reason". *Shaffer, supra* at 214, 97 S.Ct. at 2586.

Significantly, the *Minichiello* Court stated:

> [T]he mere fact of a nonresident's having taken out liability insurance with a company doing business in New York [is] not a sufficient contact to enable New York to render a judgment enforcible against other assets even at the suit of a nonresident.

*Minichiello, supra* at 110.[15] While it is true that the *Minichiello* Court was referring to an assertion of personal jurisdiction in this statement, since the *Shaffer* holding commands that the minimum contacts test be employed for assertions of any form of jurisdiction, this statement is clearly germane to the present issues. As stated by the Supreme Court, if "a direct assertion of personal jurisdiction over the defendant would violate the Constitution, . . . an indirect assertion of that jurisdiction should be equally impermissible." *Shaffer, supra* at 209, 97 S.Ct. at 2583. The Court thus concluded that "in order to justify an exercise of jurisdiction *in rem,* the basis for jurisdiction must be sufficient to justifying exercising 'jurisdiction over the interests of the person in a thing.'" *Shaffer, supra* at 207, 97 S.Ct. at 2582.

Neither the act of becoming a Delaware director or officer nor the act of being insured by a company who incidentally does business in New York demonstrates that the nonresident defendants "purposely avail[ed themselves] of the privilege of conducting activities within the forum state." *Shaffer, supra* at 209, 97 S.Ct. at 2583, *quoting Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). By acquiring liability insurance with an insurer who happened to do business in New York, the nonresident defendant herein did not "surrender [his] right to be brought to judgment only in States with which [he] had had 'minimum contacts.'" *Shaffer, supra* at 214, 97 S.Ct. at 2586. Clearly, jurisdiction here cannot be predicated solely on the happenstance that the defendant's insurer owes a "debt" which is present in New York by virtue of the insurer's doing business in New York,[16] just as jurisdiction could not be sustained in *Shaffer* solely on the fortuity that the defendants' stocks were situated in Delaware. *Shaffer, supra* at 213, 97 S.Ct. at 2585. To hold to the contrary would constitute an aberrational interpretation of the *Shaffer* decision.

## CONCLUSION

Since this action is predicated on diversity of citizenship, and since the issue presented herein has not been tendered to the New York Courts for determination, this Court has decided this case as it be-

---

**15.** Similarly, Judge Burke noted in *Simpson* that

> [u]nder the facts of *Seider* and the cases now before us I know of no authority that would support in personam jurisdiction in the courts of this State over the out-of-State defendant-insured.

*Simpson, supra* at 319, 234 N.E.2d at 677, 287 N.Y.S.2d at 644 (Burke, J., dissenting). Furthermore, the *Simpson* majority similarly implied that a *Seider* predicated attachment would fail to meet the minimum contacts test for personal jurisdiction when the Court stated:

> It is of course hardly necessary to add that neither the *Seider* decision nor the present one purports to expand the basis for in personam jurisdiction . . . .

*Simpson, supra* at 310, 234 N.E.2d at 671, 287 N.Y.S.2d at 636–37.

**16.** In accord with this conclusion is Dean McLaughlin's statement:

> [It] is difficult to escape the conclusion that under *Shaffer v. Heitner,* the *Seider* principle cannot survive. It seems clear that the fortuitous presence of the defendants' insurance company in this state is simply too thin a thread upon which to suspend quasi in rem jurisdiction. . . . [I]f *Shaffer v. Heitner* demands a purposeful act by the defendant in locating his property here, it is difficult to find such "purpose" in the presence of his insurance carrier in New York.

McLaughlin, *New York Trial Practice,* N.Y. Law Journal, Sept. 9, 1977, at 2, col. 3.

lieves the New York Courts would decide it. *E. g., Smith v. Upjohn Co.,* 529 F.2d 803, 804 (2d Cir. 1975); *Feldman v. Allgeheny Airlines, Inc.,* 524 F.2d 384 (2d Cir. 1975) (Friendly, J., concurring). As previously discussed at length, the New York Courts have expressed a perfunctory, bland adherence to *Seider.* Therefore, this Court is of the opinion that the New York Courts would welcome *Shaffer* as a "most cogent reason" to "depart from its prior holdings." *Donawitz, supra* at 142, 366 N.E.2d at 255, 397 N.Y.S.2d at 594. Indeed, the New York Courts would beckon to the Supreme Court's directive that all forms of jurisdiction must be analyzed according to the minimum contacts test.[17] Since, in the instant case, there exists a total absence of minimum contacts by the defendant with New York, the New York Courts would find that Foley "had no reason to expect to be haled before a [New York] Court." *Shaffer, supra* at 215, 97 S.Ct. at 2586. Further, since

> [t]he Due Process Clause "does not contemplate that a state may make a binding judgment . . . against an individual or corporate defendant with which the state has no contacts, ties or relations" [,]

*Shaffer, supra* at 217, 97 S.Ct. at 2587, *quoting International Shoe, supra* at 319, 66 S.Ct. 154 (ellipsis in original), the New York Courts would conclude, for the reasons stated in this opinion, that quasi in rem jurisdiction via the mechanism of a *Seider* attachment cannot be sustained.

In concluding, it is to be noted that the Supreme Court stated that:

> "[T]raditional notions of fair play and substantial justice" can be as readily offended by the perpetuation of ancient forms that are no longer justified as by the adoption of new procedures that are inconsistent with the basic values of our

constitutional heritage. The fiction that an assertion of jurisdiction over the property is anything but an assertion of jurisdiction over the owner of the property supports an ancient form without substantial modern justification.

*Shaffer, supra* at 211, 97 S.Ct. at 2584 (citations omitted). This Court finds that quasi in rem jurisdiction predicated on a *Seider* attachment is but a smoke screen of the ancient form of *Harris* based jurisdiction whose "continued acceptance would serve only to allow [the assertion of] state court jurisdiction that is fundamentally unfair to the defendant." *Shaffer, supra* at 211, 97 S.Ct. at 2584. *Harris* was the seed from which *Seider* evolved and it provided the roots through which *Seider* was nourished. Thus, since this seed has been pulled and its roots have been severed from the fertile field of legal precedent by *Shaffer, Seider's* viability has been likewise quashed. The continued existence and use of the *Seider* procedure after the *Shaffer* decision would be diametrically opposed to the fundamental guarantee of due process.

For the above stated reasons, it is ORDERED that the plaintiffs' motion for an attachment order for the purposes of obtaining quasi in rem jurisdiction is denied in all respects.

---

17. Since the New York Courts have recently been affirming *Seider* on the constraint of stare decisis alone, Chief Judge Fuld's remark in *Silver v. Great American Ins. Co.,* 29 N.Y.2d 356, 363, 278 N.E.2d 619, 623, 328 N.Y.S.2d 398, 404 (1972) is of significance here.

> [S]tare decisis does not compel [the Court] to follow blindly a court-created rule—particularly one, as here, relating to a procedural matter—once we are persuaded that reason and a right sense of justice recommend its change.

This Court is of the opinion that the New York Courts would perceive the momentous *Shaffer* decision as supplying the "reason and the sense of justice" for effecting a change of the Court's perfunctory affirmance of *Seider.*