OPINION OF THE COURT
Frank Composto, J.
In this medical malpractice action third-party defendant Dr. Scialabba moves to vacate the order of attachment and levy *286 thereunder obtained by third-party plaintiffs Paul S. Carton and Hospital for Joint Diseases.
Plaintiffs Sarah Katz and Robert Katz, both residents of New Jersey, instituted this action against defendants for medical malpractice under the following circumstances:
In September, 1968 plaintiff, Sarah Katz, was operated on by defendant third-party plaintiff, at the Hospital for Joint Diseases, located at Madison Avenue, New York City, by Paul Carton, a physician licensed to practice medicine in New York. Plaintiff Sarah Katz alleged in the original complaint that these defendants negligently caused foreign material to be left in her body which went negligently undetected.
In May, 1972 plaintiff was attended by third-party defendant Dr. Scialabba, a New Jersey resident, who had his office in New Jersey and who treated plaintiff at Muhlenberg Hospital, in New Jersey. Dr. Scialabba treated her and apparently cured the plaintiff. Thereafter plaintiff sued the original New York doctors and the Hospital for Joint Diseases. Plaintiffs did not sue Dr. Scialabba. On the eve of trial, defendant Umansky obtained an order of attachment attaching Dr. Scialabba’s malpractice insurance policy which was held by an insurance company with an office in New York State. The attachment was predicated on the ground that Dr. Scialabba was a nonresident and not amenable to process in New York. This warrant was vacated by stipulation of the parties. A second order of attachment was obtained by the present defendants third-party plaintiffs based upon the same grounds as the previous order of attachment.
Dr. Scialabba has not answered or generally appeared in this action and now makes this motion.
These facts present the classic Seider v Roth (17 NY2d 111) syndrome which provides New York plaintiffs with a procedure for obtaining jurisdiction over nonresident defendants by attaching chose in action in which the obligors were parties located in New York and defendants were the obligees. The Seider case involved attachment of an automobile liability policy insuring the defendants at a place of business of the insurer in New York State thus giving plaintiff jurisdiction over a nonresident defendant in connection with an automobile accident which occurred outside the State.
In the very recent case of Donawitz v Danek (42 NY2d 138), the Court of Appeals continued to cling to its holding in Seider v Roth (supra) but, again, by a divided court. The *287 majority ruling was based on the narrow ground that it would not extend the doctrine of its previous Seider ruling where the plaintiff is a nonresident. Although the court recognized the continued criticism of its previous holding, it was not willing to re-evaluate its position because of (p 142) "considerations of institutional stability and the mandate of stare decisis”.
However, one senses an uneasiness by the majority Judges in reaffirming their position in Seider v Roth. Thus, Judge Wachtler, writing for the majority, stated (p 141): "From its inception, the Seider-Simpson rule, allowing the attachment of a defendant’s liability insurer’s contractual obligation to defend and indemnify, has met with criticism and rejection (see, e.g., Supplementary Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR 5201 [Cumulative Annual Pocket Part 1976-1977]; Munichiello v Rosenberg, 410 F2d 106 [esp writings collected at p 108], affd on reh en banc 410 F2d 117, cert den 396 US 844; Javorek v Superior Ct. of Monterey County, 17 Cal 3d 629; De Rentiis v Lewis, 106 RI 240; Ricker v Lajoie, 314 F Supp 401). In addition, grave constitutional doubts were expressed concerning the application of SeiderSimpson attachments in cases where, as here, the plaintiff seeking the attachment was not a resident of New York (Minichiello v Rosenberg, 410 F2d 106, 110, affd on reh en banc 410 F2d 117, and concurring opn of Hays, J., at p 119, cert den 396 US 844, supra; Farrell v Piedmont Aviation, 411 F2d 812, 816; Vaage v Lewis, 29 AD2d 315, 318). Other courts have simply refused to extend the Seider-Simpson rule where the plaintiff was a nonresident (see, e.g., Varady v Margolis, 303 F Supp 23; Adkins v Northfield Foundry & Mach. Co., 393 F Supp 1079; but see McHugh v Paley, 63 Misc 2d 1092, allowing a Seider-Simpson attachment by a nonresident plaintiff where there exists 'special circumstances’).”
However, on June 24, 1977, 10 days after our Court of Appeals had reaffirmed its holding in Seider v Roth, in Donawitz v Danek (supra), the Supreme Court of the United States rendered its decision in Shaffer v Heitner (433 US 186) which sounded the death knell of the quasi in rem jurisdiction concept of Seider v Roth (see, also, McLaughlin, New York Trial Practice, NYLJ, Sept. 9, 1977, p 2, col 3; New York State Law Digest, No. 214, mid-June, 1977, p 1, col 2).
In that case, plaintiff, a nonresident of Delaware, filed a shareholder’s derivative action in Delaware naming as defendant a corporation, as well as former and present corporate *288 directors, alleging breaches of fiduciary duties by officers through antitrust violations in Oregon; no defendant was a resident of Delaware; no acts were committed in Delaware; and no stock certificates were located in Delaware. The Delaware court took jurisdiction under a quasi in rem theory. Pursuant thereto, plaintiff sequestered stock and various other corporate rights of defendants. These defendants entered a special appearance contesting sequestration on the ground that the procedures adopted did not accord them due process; that the property seized was not capable of attachment in Delaware and they did not have sufficient contacts to sustain jurisdiction of that State’s court.
The Supreme Court held, in essence, that in the instant quasi in rem action, the property now serving as the basis for State-court jurisdiction is completely unrelated to plaintiffs cause of action, the presence of the property alone, absent other ties among the defendants, the State, and the litigation, would not support the State’s jurisdiction. The court further held that Delaware’s assertion of jurisdiction over defendants, based solely as it is on the statutory presence of defendants’ property in Delaware, violates the due process clause which does not contemplate that a State may make a binding judgment against an individual or corporate defendant with which the State has no contacts, ties, or relations. The court also found the defendants’ holdings in the corporation, which are not the subject matter of this litigation and are unrelated to the underlying cause of action, do not provide contacts with Delaware sufficient to support jurisdiction of that State’s courts over defendants. The court concluded that the standard for determining whether an exercise of jurisdiction over the interest of persons is consistent with the due process clause lies in the minimum contacts standard elucidated in International Shoe Co. v Washington (326 US 310).
Of equal significance is the fact that the Supreme Court chose to restrict, almost to the point of overruling, Harris v Balk (198 US 215), the cornerstone for the Seider holding. The Harris case held that a State court can assume jurisdiction over a debt whenever personal jurisdiction over the debtor can be obtained. Thus, Chief Judge Fuld, writing for the majority in Simpson v Loehmann (21 NY2d 305, 310) reaffirmed its previous Seider holding, stating: "we perceive no denial of due process since the presence of that debt in this State (see, e.g., Harris v. Balk, 198 U. S. 215, supra) — contingent or inchoate *289 though it may be — represents sufficient of a property right in the defendant to furnish the nexus with, and the interest in, New York to empower its courts to exercise an in rem jurisdiction over him.”
In Shaffer (pp 2582-2583), however, the Supreme Court ruled that the presence of property:
"may also favor jurisdiction in cases such as suits for injury suffered on the land of an absentee owner, where the defendant’s ownership of the property is conceded but the cause of action is otherwise related to rights and duties growing out of that ownership.
"It appears, therefore, that jurisdiction over many types of actions which now are or might be brought in rem would not be affected by a holding that any assertion of state court jurisdiction must satisfy the International Shoe standard. For the type of quasi in rem action typified by Harris v. Balk and the present case, however, accepting the proposed analysis would result in significant change. These are cases where the property which now serves as the basis for state court jurisdiction is completely unrelated to the plaintiff’s cause of action. Thus, although the presence of defendant’s property in a State might suggest the existence of other ties among the defendant, the State, and the litigation, the presence of the property alone would not support the State’s jurisdiction. If those other ties did not exist, cases over which the State is now thought to have jurisdiction could not be brought in that forum.”
This court also agrees with the analytical approach of Judge Jasen in his concurring opinion in the Donawitz case (42 NY2d 138, 147-148, supra) wherein he held:
"I believe that Seider should be overruled. Doubtless the obligation to defend and indemnify is a valuable right but the 'debt’ of the insurer it represents is inchoate and conditional and attachment is thereby precluded. (See CPLR 5201, subd [a].) The law prior to Seider was clear that contractual rights which were not yet translatable into a present duty were too inchoate to be attached. (E.g., Sheehy v Madison Sq. Garden Corp., 266 NY 44.) After Seider, in all other spheres, the law was equally adamant: absent a present duty, there is no debt. (Glassman v Hyder, 23 NY2d 354, 359.) The obligation to defend and indemnify is an important right. The duty to defend may even be more important than the duty to indemnify, at least where the action is for more than the policy limits. However, neither duty is severable from the insurance
*290 policy which creates it. The obligation to defend and indemnify remains inchoate until jurisdiction has been duly acquired over the insured. (Matter of Riggle, 11 NY2d 73.)
"Nor is the obligation attachable as an interest in property (see CPLR 5201, subd [b]) since it is a property interest without any realistic independent economic value. Although an economic value has been assigned more or less arbitrarily (see Simpson v Loehmann, 21 NY2d 305, 310, supra), the obligation, until it has ripened, has no real economic significance. (ABKCO Inds. v Apple Films, 39 NY2d 670, 675-676.) It is unassignable and unmarketable and execution upon it would be most impracticable.” (See, also, concurring opn of Judge Breitel in Simpson v Loehmann, 21 NY2d 305, supra.)
Jurisprudentially, the Supreme Court in Shaffer extended the criterion of the minimum contacts concept of in personam jurisdiction to quasi in rem jurisdiction so that the fortuitous presence of defendant’s property in New York will no longer justify its seizure in order to create quasi in rem jurisdiction (McLaughlin, New York Trial Practice, NYLJ, Sept. 9, 1977, p 2 col 3).
Contrary to the third-party plaintiffs assertion, the Seider line of cases is not predicated on the direct action theory but upon traditional quasi in rem jurisdictional analysis.
Neither is the question of residency relevant under the circumstances, nor can it be said that the insurance policy in and of itself is sufficient property to satisfy the "contact” necessary for jurisdiction.
In the instant case, the third-party defendant, Dr. Scialabba, is a nonresident, does not practice in the State of New York, has no professional affiliations in the State of New York, has no property whatsoever in the State of New York, except for the right to have an insurance company defend him in a malpractice action, did not treat the plaintiff in this action in the State of New York, and has had no contact whatsoever with the third-party plaintiffs or anyone else involved in this action within the State of New York.
Prophetically, Professor Malcolm L. Stein in his critical analysis of the Seider line of cases (Jurisdiction by Attachment of Liability Insurance, 43 NYU L Rev 1075, 1136), wrote: "Perhaps the redeeming feature of Seider and Simpson is their emphasis upon the need for reformulation and unification of the law of jurisdiction and forum non conveniens. Many of the constitutional and practical problems engendered *291 by these cases may be resolved as early as others that have arisen when new procedures have been engrafted on old. Hence, utilization of a limited appearance and realization that the insurer and not the insured is the real party in interest may be interpreted by some as steps toward a rational development of the law of jurisdiction. Nevertheless, difficulties of administration could be sufficient to convince the courts that the assertion of quasi in rem jurisdiction by attachment of a liability insurance policy is an impractical means of providing a forum for injured residents. More important, the deprivation of constitutional rights of the defendant-insured and his insurer augurs the demise of Seider and Simpson.”
Accordingly, the court finds that the third-party plaintiff did not acquire jurisdiction over the third-party defendant and therefore the motion to vacate the attachment and the levy thereunder is granted in all respects.