TOMMIE ALFORD, Individually and as Parent and Natural Guardian of TIMOTHY ALFORD, an Infant, Respondent, v DAVID McGAW, Appellant.

Fourth Department, March 1, 1978

## APPEARANCES OF COUNSEL

*Smith, Murphy & Schoepperle (Frank G. Godson, J. Michael Hayes* and *Thomas L. Bondy* of counsel), for appellant.

*Goldstein & Freed (Robert B. Sommerstein* of counsel), for respondent.

## OPINION OF THE COURT

DILLON, J.

Twelve years after its controversial birth by a divided Court of Appeals, we are asked to decide whether the jurisdictional doctrine of *Seider v Roth* (17 NY2d 111) remains viable. In *Seider,* the plaintiffs, residents of New York, were injured in an automobile accident in Vermont, allegedly through the negligence of the defendant, who was a resident of Quebec, Canada. The insurance carrier, which did business in New York, had issued an automobile liability insurance policy to the defendant in Quebec. It was held that the insurer's obligation to defend and indemnify the defendant was a "debt" within the meaning of CPLR 5201 which was properly subject to attachment under CPLR 6202 to confer jurisdiction in rem in this State over the defendant.

It is now said that jurisdiction over a nonresident defendant may no longer be so simply achieved in light of the Supreme Court's pronouncement in *Shaffer v Heitner* (433 US 186)[1] that due process requires that all assertions of State court jurisdiction be evaluated according to the "minimum contacts" standard set forth in *International Shoe Co. v Washington* (326 US 310, 316). The contacts among the defendant, the State and the litigation must be such that "the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice'" *(id.,* p 316).

We are here concerned with a negligence action arising from an accident which occurred in Ontario, Canada. The plaintiffs, father and infant son, are residents of New York. It is alleged that the infant was injured when struck by an automobile owned and operated by the defendant, a resident of Ontario. An order of attachment directed the Sheriff to levy upon the contractual obligation of the Hartford Fire Insurance Company to defend and indemnify the defendant under a policy of automobile liability insurance issued in Ontario by Hartford to the defendant. Hartford is an insurer which does business in New York. The order of attachment was served upon Hartford in this State and the defendant was personally

---

1. In *Shaffer,* a nonresident of Delaware commenced in that State a shareholder's derivative action against directors of a Delaware corporation by attaching the defendants' corporate stock which, under State law, had a situs in Delaware. The defendants had no other contacts, ties or relations with the forum State and the property attached was neither related to nor the subject matter of the underlying action.

served with the order and the summons and complaint in Ontario. Thus, under the *Seider* doctrine, "jurisdiction in rem", limited to the face amount of the liability insurance policy, was acquired over the defendant "by the attachment in view of the fact that the policy obligation [is] a debt to the defendant." *(Simpson v Loehmann,* 21 NY2d 305, 310.)

Special Term denied the defendant's motion to vacate the order of attachment and to dismiss the action. While the plaintiffs argue that their method of achieving jurisdiction is not proscribed by the decision in *Shaffer,* the defendant asserts, without contradiction, that aside from his contractual relationship with Hartford, he has had no contact with New York such as would subject him to the jurisdiction of our State courts.

*Seider's* jurisdictional doctrine came under attack at its inception (see *Seider v Roth,* 17 NY2d 111, 115-118, *supra* [BURKE, J., dissenting]) and the criticism has intensified over the years (see, e.g., *Donawitz v Danek,* 42 NY2d 138, 143-151 [JASEN, J., concurring]; *Simpson v Loehmann,* 21 NY2d 305, 316, *supra* [BREITEL, J., concurring]; Siegel, Supplementary Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR 5201 [Supplementary Pamphlet 1964 to 1976]; McLaughlin, Seider v Roth—Dead or Alive?, NYLJ, Dec. 9, 1977, p 1, col 1). The attack is primarily focused upon the lack of certainty of the insurer's "debt" (see CPLR 5201) to the defendant and the circular or bootstrap reasoning of the *Seider* decision which allows a "promise to defend the insured * * * to furnish the jurisdiction for a civil suit which must be validly commenced before the obligation to defend can possibly accrue" *(Seider v Roth,* 17 NY2d 111, 115, *supra* [BURKE, J., dissenting]). While these arguments often have been sympathetically received by the Court of Appeals and have sometimes prompted strong expressions of agreement, they have consistently been rejected as a basis for the denial of quasi in rem jurisdiction (see *Donawitz v Danek, supra; Neuman v Dunham,* 39 NY2d 999; *Simpson v Loehmann, supra).*

There is ample authority which asserts that the *Seider* doctrine is premised upon the quasi in rem jurisdictional rationale of *Harris v Balk* (198 US 215), a seminal case wherein jurisdiction was sustained based solely upon the fortuitous presence of the debtor in the forum State. That rationale was rejected in *Shaffer v Heitner* (433 US 186, *supra),* to the extent of its application to "cases where the

property which * * * serves as the basis for state-court jurisdiction is completely unrelated to the plaintiff's cause of action" as it was in *Harris (Shaffer v Heitner,* 433 US 186, 208-209). While the presence of such property alone no longer will support a State's assertion of jurisdiction, the court recognized that it nonetheless might be suggestive of "the existence of other ties among the defendant, the State, and the litigation" sufficient to establish the requisite minimum contacts *(id.,* p 209).

It is settled law that a State may constitutionally garnish a debt owed to the defendant by another. Additionally, as an intermediate appellate court, we are bound to recognize that the debt here, as represented by the insurer's obligation to defend and indemnify the insured, is subject to attachment under CPLR 5201 (see, e.g., *Chrapa v Johncox,* 60 AD2d 55). Absent a showing of any other connection of a nonresident defendant with this forum, the question presented then is whether the presence of that debt in New York, related to the extent that it is to the plaintiffs' underlying cause of action, establishes sufficient "minimum contacts" among the "defendant, the State, and the litigation" such that the maintenance of a suit by a resident plaintiff does not offend "traditional notions of fair play and substantial justice". We find that such ties are here present and thus we hold that due process is not offended by this State's assertion of jurisdiction.[2] The relations are sufficient to support the entry of a binding judgment against the defendant (cf. *International Shoe Co. v Washington,* 326 US 310, 319, *supra;* see, also, Siegel, Supplementary Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR 5201 [Supplementary Pamphlet, 1964 to 1977], pp 16-19).

Our conclusion is neither novel nor creative. It is supported by precedent. Heretofore, the concern with *Seider* has been more with substantive than with constitutional infirmity, but where the courts have been called upon to assess the due process implications of the *Seider* doctrine in actions by New York residents, no constitutional impediment has been found (see, e.g., *Minichiello v Rosenberg,* 410 F2d 106, rehearing en

---

2. Two cases emanating from the Eastern District of New York have dealt with the impact of *Shaffer* upon the *Seider* doctrine. In *O'Connor v Lee-Hy Paving Corp.* (437 F Supp 994) it was held that *Seider* remains viable. In *Torres v Towmotor Div. of Caterpillar* (— F Supp — [Nov. 18, 1977]), *Seider* was held to have been overruled by *Shaffer.*

banc 410 F2d 117, cert den 396 US 844). A decade before the Supreme Court's decision in *Shaffer v Heitner (supra)*, Chief Judge FULD wrote:

"In concluding that we should adhere to *Seider v. Roth*, it may prove helpful to have in mind some of the considerations upon which that decision was predicated.

"The historical limitations on both in personam and in rem jurisdiction, with their rigid tests, are giving way to a more realistic and reasonable evaluation of the respective rights of plaintiffs, defendants and the State in terms of fairness. (See, e.g., *International Shoe Co. v. Washington*, 326 U. S. 310; *McGee v. International Life Ins. Co.*, 355 U. S. 220; *Longines-Wittnauer Watch Co. v. Barnes & Reinecke*, 15 N Y 2d 443.) Such an evaluation requires a practical appraisal of the situation of the various parties rather than an emphasis upon somewhat magical and medieval concepts of presence and power. Viewed realistically, the insurer in a case such as the present is in full control of the litigation; it selects the defendant's attorneys; it decides if and when to settle; and it makes all procedural decisions in connection with the litigation. (See, e.g., *Thrasher v. United States Liab. Ins. Co.*, 19 N Y 2d 159, 167.) Moreover, where the plaintiff is a resident of the forum state and the insurer is present in and regulated by it, the State has a substantial and continuing relation with the controversy. For jurisdictional purposes, in assessing fairness under the due process clause and in determining the public policy of New York, such factors loom large." *(Simpson v Loehmann*, 21 NY2d 305, 311, *supra.)*

It is clear, therefore, that the insurer plays the critical role in this litigation and bears the major risks of defense and judgment. In *Harris* the jurisdictional scheme had the effect of diminishing the personal assets of the one to whom the debt was owed. In *Shaffer* the court aborted a similar result. Application of the *Seider* doctrine, however, has not been shown to disturb the defendant's personal assets but permits the attachment of a contractual debt which arises only because of its relation to the underlying cause of action. The foundation of *Seider* is in its presumption that the insurer's obligation to defend and indemnify arises upon the occurrence of the accident. Essentially, the jurisdictional test must be one of fairness. The unfairness which is apparent in *Harris* and was avoided in *Shaffer,* is not present here.

In so holding, we acknowledge that our assessment of the

jurisdictional consequence of this garnishment necessarily has overtones of authorizing a direct action against the insurer even though such an action is precluded in this State (Insurance Law, § 167, subd 7). The issue has been much debated but the Court of Appeals has established only that the *Seider* jurisdictional analysis begets such an "effect".

The "direct action" argument was first raised in *Seider.* Writing for the court, Chief Judge DESMOND found it not to be determinative of the jurisdictional question inasmuch as the insurer "by its policy * * * has agreed to defend in any place where jurisdiction is obtained against its insured." *(Seider v Roth,* 17 NY2d 111, 114, *supra.)* Indeed, he expressly stated that "there is no policy reason against requiring the insurer to come in to New York and defend as to an accident which occurred in Vermont injuring New York residents" *(id.,* p 114). The "direct action" argument was again rejected in *Simpson v Loehmann* (21 NY2d 305, 311, *supra)* where Chief Judge FULD adopted *Seider's* language. Most recently, in *Donawitz v Danek* (42 NY2d 138, *supra),* while the majority indicated that the "effect" of *Seider* was to create a direct action against an insurer, it found that public policy was not offended "[i]n the absence of any corrective measures taken by the Legislature during the 11-year history of the *Seider-Simpson* rule" *(id.,* p 142).

Accordingly, a full consideration of the insurer's role in the litigation is not precluded on the basis that it may have the "effect" of authorizing a direct action where the insurer's anonymity will be preserved throughout the proceedings (see *O'Connor v Lee-Hy Paving Corp.,* 437 F Supp 994, 1004).

The order should be affirmed.

HANCOCK, JR., J. (concurring). The majority are of the opinion that *Seider v Roth* (17 NY2d 111) remains the law of this State despite the recent decision of the Supreme Court in *Shaffer v Heitner* (433 US 186). It is apparently conceded that defendant has had no contact with New York such as would subject him to the jurisdiction of our State courts, apart from his contractual relationship with Hartford. However, the majority find that the defendant has the minimum contacts required by *Shaffer v Heitner (supra)* and *International Shoe Co. v Washington* (326 US 310) by treating the action as a direct action against the liability insurance company to the extent, at least, of attributing the New York contacts of the insurance company to the defendant for the purpose of secur-

ing jurisdiction. (See *O'Connor v Lee-Hy Paving Corp.,* 437 F Supp 994.) I do not agree.

The activities of the insurer are not the subject matter of the litigation, nor is the underlying cause of action related to these activities. There is no showing that defendant " 'purposely avail[ed himself] of the privilege of conducting activities within the forum State' ". *(Shaffer v Heitner, supra,* at p 216, quoting *Hanson v Denckla,* 357 US 235, 253.) Indeed, when defendant, an Ontario resident, purchased insurance in Ontario, he may not even have been aware that the insurer conducted activities in New York. In my opinion the due process requirement that defendant have "certain minimum contacts [with New York] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice' " *(International Shoe Co. v Washington, supra,* at p 316, quoting *Milliken v Meyer,* 311 US 457, 463) has not been met here.

Moreover, as pointed out in Justice STEVENS' concurring opinion in *Shaffer,* "The requirement of fair notice also * * * includes fair warning that a particular activity may subject a person to the jurisdiction of a foreign sovereign." *(Shaffer v Heitner, supra,* at p 218.) It cannot be said that defendant's purchase of insurance in Ontario gave him notice that he could be subject to suit in any State in which the insurer did business. And it strains reason to suggest that anyone buying insurance consents to suit in any jurisdiction in which the insurer has contacts.

Further, in my opinion, the Court of Appeals has not unequivocally accepted the proposition that a tort action against a defendant covered by a policy of liability insurance is in reality an action not against the tort-feasor—defendant, but against the insurance company (see *Donawitz v Danek,* 42 NY2d 138, concurring opn, JASEN, J., p 147, dissenting opn, COOKE, J., pp 152-153). As stated by Dean McLaughlin in his article "Seider v. Roth—Dead or Alive?" (NYLJ, Dec. 9, 1977, p 1, col 1):

"It is not at all clear that Seider v. Roth is regarded by the New York Court of Appeals as a judicially created direct action statute" and further

"It should not be forgotten that direct actions against insurance companies run counter to the traditional public policy of New York State.[18] Indeed, a Judicial Conference—Law Revision Commission Proposal to enact a direct action

statute in order to abrogate the *Seider* doctrine was vetoed in 1973.[19] One may question whether it is appropriate for a court to enter this miasma in order to create a direct action whose procedural and substantive reverberations are totally unpredictable. * * *

"(18) See N.Y. Ins. Law sec. 167 (b).

"(19) The proposed statute is discussed in 16 N.Y. Judicial Conf. Rep. 264 (1971)."

Because the majority's opinion that *Seider* is still viable depends upon the direct action hypothesis—a legal fiction which, in my opinion, has not been and should not be adopted, I cannot accept it. (See *Torres v Towmotor Div. of Caterpillar,* — F Supp — [Nov. 18, 1977]; *Katz v Umansky,* 92 Misc 2d 285; *Kennedy v Deroker,* 91 Misc 2d 648.)

I concur in the result reached, however, because although I believe *Seider* and *Donawitz* are no longer the law in this State, I do not believe that plaintiff's complaint should be dismissed. Plaintiff's action was commenced in reliance on *Seider* and *Harris v Balk* (198 US 215) prior to the *Shaffer* decision on June 24, 1977.[1] Under these circumstances, were our court to agree that the United States Supreme Court has overruled *Seider* in its *Shaffer* decision, we could, in my opinion, hold that it has done so prospectively only,[2] or make other appropriate provisions to protect plaintiff's vested rights.[3]

CARDAMONE, J. P., SIMONS and DENMAN, JJ., concur with DILLON, J.; HANCOCK, JR., J., concurs in result, in an opinion.

Order affirmed, with costs.

---

**1.** Plaintiff's action was commenced through an order of attachment upon the property of defendant-appellant, McGaw, granted on May 20, 1975, and levied upon Hartford on May 27, 1975. The motion to quash the attachment and dismiss the action was made on July 15, 1976, and denied on July 27, 1976.

**2.** See opinion of Justice CLARK in *Linkletter v Walker* (381 US 618) in which the Supreme Court declined to give retrospective effect to its prior decision in *Mapp v Ohio* (367 US 643; 21 Corpus Juris Secundum, Courts, § 194 [Cumulative Annual Pocket Part, 1977]; The Effect of the Interstate Agreement on Detainers Upon Federal Prisoner Transfer, 46 Fordham L Rev 492, 518-519).

**3.** See New York State Law Digest, No. 216, December 1977, Special Insert, "Protecting Dismissed *Seider* Cases from the Statute of Limitations" in which various methods for avoiding the unjust impact of dismissing cases initiated in reliance on *Seider* are discussed, including the suggestion that the *Shaffer* decision "should not be allowed retroactive impact any greater than would be allowed a new statute which alters prior law."