Jeffrey D. SAVCHUK, Respondent,

v.

Randal RUSH and State Farm Mutual
Automobile Insurance Company,
garnishee, Appellants.

No. 45556.

Supreme Court of Minnesota.

Oct. 20, 1978.

Meagher, Geer, Markham, Anderson, Adamson, Flaskamp & Brennan and James F. Roegge, Minneapolis, for appellants.

Minnesota Trial Lawyers Assn., Robert J. Milavetz and Karen Ives, Minneapolis, for amicus curiae.

Schermer, Schwappach, Borkon & Ramstead and John D. Mariani and Richard I. Diamond, Minneapolis, for respondent.

WAHL, Justice.

On remand from the United States Supreme Court for further consideration in light of *Shaffer v. Heitner*, 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977). For the reasons below, we distinguish *Shaffer v. Heitner, supra,* and hold that the assertion of jurisdiction pursuant to Minn.St. 571.41, subd. 2, as limited by our earlier decision in *Savchuk v. Rush*, Minn., 245 N.W.2d 624

(1976), vacated and remanded, 433 U.S. 902, 97 S.Ct. 2964, 53 L.Ed.2d 1086 (1977), is consistent with the standards established by *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), and its progeny.

The facts are as stated in the earlier decision. Plaintiff, Jeffrey Savchuk, was injured in a single-car accident in Elkhart, Indiana, on January 13, 1973. At the time of the accident, both Savchuk, a senior in high school, and the driver of the car, defendant Randal Rush, were Indiana residents. In June 1973, Savchuk moved with his parents to Minnesota, where he became employed, was married and continues to reside. The personal injury action was commenced in district court, Hennepin County, on May 28, 1974. Savchuk served a garnishment summons on garnishee State Farm Insurance pursuant to Minn.St. 571.-41, subd. 2 [1] and Minn.St. 60A.19, subd. 1(3). Defendant Rush, still an Indiana resident, was personally served with a copy of the garnishment summons and copies of the summons and personal injury complaint.

By order, the district court denied the motion of Rush and State Farm to dismiss for lack of jurisdiction and insufficient process. They appealed to this court and the order was affirmed. *Savchuk v. Rush*, Minn., 245 N.W.2d 624 (1976).

Upholding the constitutionality of Minnesota's garnishment provision, Minn.St. 571.-41, subd. 2, this court found that procedure "consistent with two often-stated positions of this court—namely, our interest in providing a forum to residents of this state and our determination in long-arm cases to extend the jurisdiction of our courts to the maximum limits consistent with due process." 245 N.W.2d 628. The statute was interpreted to satisfy three due process requirements: the provision of adequate notice to defendant-insured; a limitation of liability to insurance policy amounts; and restriction of use to plaintiffs who reside in the forum state. 245 N.W.2d 628.

On June 24, 1977, the United States Supreme Court vacated that judgment and remanded the case for further consideration in light of *Shaffer v. Heitner*, 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977), which requires, in particular, that "all assertions of state court jurisdiction must be evaluated according to the standards set forth in *International Shoe Co.* and its progeny." 97 S.Ct. 2584–85.

The issue now before this court is whether Minnesota's assertion of jurisdiction over out-of-state defendants pursuant to Minn.St. 571.41, subd. 2, as limited by this court in *Savchuk, supra,* satisfies the due process standards set forth in *International Shoe Co.* and *Shaffer.*

In *Shaffer, supra,* a nonresident plaintiff filed a shareholder's derivative suit in Delaware state court, naming as defendants Greyhound (a Delaware corporation), Greyhound Lines (its wholly-owned subsidiary

---

1. Minn.St. 571.41, subd. 2, states: Notwithstanding anything to the contrary herein contained, a plaintiff in any action in a court of record for the recovery of money may issue a garnishee summons before judgment therein in the following instances only:

  *   *   *   *   *   *

(b) If the court shall order the issuance of such summons, if a summons and complaint is filed with the appropriate court and either served on the defendant or delivered to a sheriff for service on the defendant not more than 30 days after the order is signed, and if, upon application to the court it shall appear that:

  *   *   *   *   *   *

(2) The purpose of the garnishment is to establish quasi in rem jurisdiction and that

  *   *   *   *   *   *

(b) defendant is a nonresident individual, or a foreign corporation, partnership or association.

(3) The garnishee and the debtor are parties to a contract of suretyship, guarantee, or insurance, because of which the garnishee may be held to respond to any person for the claim asserted against the debtor in the main action.

(4) The creditor has been unable to serve upon the debtor the summons and complaint in the main action because the debtor has been inaccessible due to residence and employment in buildings where access is restricted.

incorporated in California), and 28 present or former officers or directors of one or both of the corporations, none of the last being Delaware residents. The complaint alleged that the individual defendants had violated their duties to the corporation and its subsidiary by permitting activities in Oregon which made the company liable for substantial antitrust litigation, damages, and criminal contempt fines. The Delaware court obtained jurisdiction by sequestering, via stop-transfer orders, Greyhound stock owned by the individual defendants.[2]

On appeal to the Delaware Supreme Court, one constitutional challenge to the jurisdiction-by-sequestration procedure was side-stepped:

"There are significant constitutional questions at issue here but we say at once that we do not deem the rule of *International Shoe* to be one of them. * * * The reason, of course, is that jurisdiction under § 366 remains, as it was in 1963, *quasi in rem* founded on the presence of capital stock here, not on prior contact by defendants with this forum * * *." *Greyhound Corporation v. Heitner*, 361 A.2d 225, 229 (Del.1976), reversed sub nom. *Shaffer v. Heitner*, 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683.

The United States Supreme Court overruled this categorical in rem/in personam jurisdiction analysis:

"* * * in order to justify an exercise of jurisdiction *in rem*, the basis for jurisdiction must be sufficient to justify exercising 'jurisdiction over the interests of persons in a thing.' The standard for determining whether an exercise of jurisdiction over the interests of persons is consistent with the Due Process Clause is the minimum contacts standard elucidat-

ed in *International Shoe [Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945)]. 433 U.S. 207, 97 S.Ct. 2582, 53 L.Ed.2d 699.

"* * * For in cases such as *Harris v. Balk*, 198 U.S. 215, 25 S.Ct. 625, 49 L.Ed. 1023 (1905) and this one, the only role played by the property is to provide the basis for bringing the defendant into court. Indeed, the express purpose of the Delaware sequestration procedure is to compel the defendant to enter a personal appearance. In such cases, if a direct assertion of personal jurisdiction over the defendant would violate the Constitution, it would seem that an indirect assertion of that jurisdiction would be equally impermissible." 433 U.S. 209, 97 S.Ct. 2583, 53 L.Ed.2d 701.

Evaluating the sequestration procedure by that standard, the court held Delaware's assertion of jurisdiction to be inconsistent with the due process "minimum contacts" limitation on state power. It found the asserted state interest in supervising the management of local operations to be imperfectly served by the sequestration procedure, which is not expressly limited to corporate fiduciaries and does not even guarantee jurisdiction over all such figures.[3] 433 U.S. 214, 97 S.Ct. 2585–86, 53 L.Ed.2d 704. Though such an interest might support the application of Delaware law to the controversy, choice of law does not necessarily establish jurisdiction over the parties. 433 U.S. 215, 97 S.Ct. 2586, 53 L.Ed.2d 704. Accordingly, judgment was reversed.

*Shaffer* generally directs the application of *International Shoe Co.* standards to all assertions of state court jurisdiction, 433 U.S. 212, 97 S.Ct. 2584, 53 L.Ed.2d 703, but the necessary consequences for jurisdiction

---

2. 8 Del.Code Ann. § 169 makes Delaware the situs of ownership of stock in Delaware corporations; the rule in the other 49 states places that situs in the state of the owner's residence. 97 S.Ct. 2588 (Stevens, concurring).

Sequestration is a seizure of property used to compel the personal appearance of the nonresident defendant. See, 10 Del.Code Ann. § 366.

Although liability is limited to the value of the property seized, potential liability here was $1.2 million. 97 S.Ct. 2574 n. 7.

3. Heitner failed to secure jurisdiction over seven of the individual defendants since Delaware law does not require directors to own stock. 8 Del.C. § 141(b).

under Minn.St. 571.41, subd. 2, are not clear. That statute embodies the rule of *Seider v. Roth,* 17 N.Y.2d 111, 269 N.Y.S.2d 99, 216 N.E.2d 312 (1966). It provides jurisdiction over a nonresident defendant via garnishment of a contractual obligation, the obligation of the insurance company (doing business in this state) to defend and indemnify the nonresident, insured defendant. Under the statute, as interpreted in our earlier opinion, the nonresident defendant is guaranteed notice, his liability is limited to the policy's face amount and the procedure may be utilized only by residents of the forum state. *Savchuk v. Rush, supra.*

Although *Seider v. Roth* -type jurisdiction is undoubtedly the most highly controversial and significant contemporary application of the doctrine of quasi-in-rem jurisdiction, it does not appear in the historical discussion in *Shaffer.*[4]

Since *Shaffer,* New York courts have split over its implications for *Seider v. Roth*-type jurisdiction. Several trial courts have held such jurisdiction to be precluded by *Shaffer: Torres v. Towmotor Division of Caterpillar, Inc.,* D.C., 457 F.Supp. 460 (E.D.N.Y.1977) (cited in *Alford v. McGaw,* 61 A.D.2d 504, 402 N.Y.S.2d 499 (1978); *Rodriguez v. Wolfe,* 401 N.Y.S.2d 442 (N.Y. Sup.1978); *Attanasio v. Ferre,* 401 N.Y.S.2d 685 (N.Y.Sup.1977); *Katz v. Umansky,* 92 Misc.2d 285, 399 N.Y.S.2d 412 (N.Y.Sup.

1977); *Kennedy v. Deroker,* 91 Misc.2d 648, 398 N.Y.S.2d 628 (N.Y.Sup.1977). Other trial courts have held that such jurisdiction does not offend due process: *O'Connor v. Lee-Hy Paving Corp.,* 437 F.Supp. 994 (E.D. N.Y.1977), affirmed, 579 F.2d 194 (2d Cir. 1978); *Wallace v. Target Store, Inc.,* 92 Misc.2d 454, 400 N.Y.S.2d 478 (N.Y.Sup. 1977). Most recently, a New York appellate court upheld the exercise of *Seider*-type jurisdiction in light of *Shaffer v. Heitner. Alford v. McGaw,* 61 A.D.2d 504, 402 N.Y.S.2d 499 (1978).

This exercise of jurisdiction differs in many important respects from the Delaware sequestration procedure invalidated in *Shaffer:* First, sequestration did not parallel the asserted state interest in the management of state-chartered corporations— sequestration could be used in *any* suit against a nonresident, and in fact did not guarantee jurisdiction over corporate fiduciaries. By contrast, Minnesota's garnishment procedure specifically premises jurisdiction on attachment of the obligation to respond to claims in the underlying action, Minn.St. 571.41, subd. 2(b)(3). Delaware's interest in supervising its corporations' fiduciaries established only the propriety of Delaware *law,* not necessarily a Delaware *forum.* 433 U.S. 214–15, 97 S.Ct. 2586, 53 L.Ed.2d 704–05. Minnesota's legitimate interest in facilitating recoveries for resident plaintiffs[5] not only requires provision of a local forum, but may override traditional

---

**4.** The United States Supreme Court has never considered the constitutionality of the procedure, twice declining to review appellate decisions sustaining the exercise of *Seider v. Roth* jurisdiction: *Minichiello v. Rosenberg,* 410 F.2d 106 (2 Cir. 1968) affirmed on rehearing en banc, 410 F.2d 117, certiorari denied, 396 U.S. 844, 90 S.Ct. 69, 24 L.Ed.2d 94 (1969), *Victor v. Lyon Assoc. Inc.,* 21 N.Y.2d 695, 287 N.Y.S.2d 424, 234 N.E.2d 459 (1967), appeal dismissed for want of a substantial Federal question, sub nom. *Hanover Ins. Co. v. Victor,* 393 U.S. 7, 88 S.Ct. 44, 21 L.Ed.2d 8 (1968).

**5.** Cf. *Minichiello v. Rosenberg,* 410 F.2d 106 (2 Cir. 1968); *McGee v. International Life Ins. Co.,* 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957); *Hess v. Pawloski,* 274 U.S. 352, 47 S.Ct. 632, 71 L.Ed. 1091 (1927).

A state's interest in providing a forum for its residents is particularly strong where an alternative forum would not have permitted recovery. In the instant case, Indiana's guest statute would have cut off Savchuk's claim. Ind.Stat. § 9–3–3–1. A plaintiff's lack of access to an alternative forum might be a legitimate consideration in justifying exercise of jurisdiction. *Shaffer v. Heitner,* 433 U.S. 211, 97 S.Ct. 2584, 53 L.Ed.2d 702, n. 37. We also note, in this regard, that by the time the trial court ruled on Savchuk's motion to amend the complaint by making State Farm Mutual a party, the Indiana two-year statute of limitations had run.

One commentator states that a plaintiff's residence "may be deemed an overriding minimum contact" sufficient to justify the exercise of jurisdiction, where no alternative forum exists. Zammit, Quasi-in-Rem Jurisdiction: Out-

choice of law analysis. See, *Schwartz v. Consolidated Freightways Corp. of Delaware,* 300 Minn. 487, 221 N.W.2d 665 (1974), appeal after remand, 306 Minn. 564, 237 N.W.2d 385 (1975) (applying Minnesota comparative negligence law where plaintiff was a Minnesota resident, although accident occurred in contributory-negligence state.) The stock sequestered in Delaware was completely unrelated to the plaintiff's cause of action, constituting only an attachable asset used to compel the defendants' personal appearance. 433 U.S. 208,-09, 97 S.Ct. 2585, 53 L.Ed.2d 700–01. In the instant case, the insurer's obligation to defend and indemnify, while theoretically separable from the tort action, has *no* independent value or significance apart from accident litigation. In the accident litigation, however, it is inevitably the focus, determining the rights and obligation of the insurer, the insured, and practically speaking, the victim.

More importantly, because this assertion of state court jurisdiction is, as has long been acknowledged, a "hybrid," its jurisdiction does not rest exclusively on *Harris v. Balk.*[6] This court and other courts have evaluated due process challenges to such an assertion of jurisdiction in terms of minimum contacts and fairness. *Savchuk v. Rush,* Minn., 245 N.W.2d 624, 629 (1976); *Simpson v. Loehmann,* 21 N.Y.2d 305, 311, 287 N.Y.S.2d 633, 637, 234 N.E.2d 669, 672 (1967); *Rintala v. Shoemaker,* 362 F.Supp. 1044, 1053 (D.Minn.1973). See, *Alford v. McGaw,* 61 A.D.2d 504, 402 N.Y.S.2d 499, 502 (1978).

Just as *Shaffer* compels perforation of the *in rem* fiction as a jurisdictional base, we are obligated to consider the practical relationship between the insurer and the nominal defendant here. The insurer's garnished obligation to respond is complemented by the insured's obligation to cooperate. Our limitation of liability to policy limits protects the named defendant from personal exposure. The result is often labeled a procedural alternative to a direct action statute, a preferred alternative which permits insurer anonymity. See, *Alford v. McGaw,* 61 A.D.2d 504, 402 N.Y.S.2d 499, 503 (1978); See, also, Mehren & Trautman, "Jurisdiction to Adjudicate: A Suggested Analysis," 79 Harv.L.Rev. 1121, 1168. This label does not obviate the due process scrutiny. Cf., *Watson v. Employers Liability Assurance Corp.,* 348 U.S. 66, 75 S.Ct. 166,

moded & Unconstitutional? 49 St. John's L.Rev. 668, 682 (1975).

**6.** Most recently in *O'Connor v. Lee-Hy Paving Corp.,* 579 F.2d 194, 198 (2 Cir. 1978), the Second Circuit Court of Appeals by Judge Friendly distinguished *Seider* from *Harris* in light of *Shaffer.*

"What sharply differentiates these cases from those just hypothesized is that a judgment for the plaintiff will not deprive a defendant of anything substantial that would have been otherwise useful to him. He could not recover, sell or hypothecate the covenant to indemnify; its utility is solely to protect him from liability and in an appropriate case to allow the plaintiff to recover from the insurer * * *. What we said in *Minichiello, supra,* nine years ago apropos of *Harris v. Balk* remains just as true today: ' * * * a *Seider* judgment would mean simply that liability policies, on which appellants could not have realized for any purpose other than to protect themselves against losses to others, will be applied to the very objective for which they were procured.' 410 F.2d 118 (emphasis sup-

plied). Moreover, since the insurance policy was purchased to protect against the type of liability which is the subject of the lawsuit and since the obligation to defend clearly encompasses the litigation, *Seider* does not sanction 'the type of *quasi in rem* action typified by *Harris v. Balk* and the present case [sequestration of shares in a Delaware corporation],' where the property which 'serves as the basis for * * * jurisdiction is *completely unrelated* to the plaintiff's cause of action,' *Shaffer v. Heitner, supra,* 433 U.S. 208–09, 97 S.Ct. 2582, 53 L.Ed.2d 700–01 (emphasis supplied). The fall of *Harris v. Balk* therefore does not necessarily topple *Seider,* * * *."

See, also, Smit, "The Enduring Utility of In Rem Rules: A Lasting Legacy of *Pennoyer v. Neff,*" 43 Brooklyn L.Rev. 600, 603–24 (1977), cited in *Shaffer,* 433 U.S. 208, 97 S.Ct. 2582, 53 L.Ed.2d 700, n. 30 and, *Jonnet v. Dollar Sav. Bank of New York,* 530 F.2d 1123, 1138–39 (3 Cir. 1976) (Gibbons, J., concurring), cited in *Shaffer,* 433 U.S. 205, 97 S.Ct. 2581, 53 L.Ed.2d 698.

99 L.Ed. 74 (1954); it does, however, serve to minimize the traditional "jurisdictional bias" in favor of the nominal defendant.

Similarly, limiting the availability of this type of quasi in rem jurisdiction to residents of the forum, *Savchuk v. Rush*, Minn., 245 N.W.2d 628 (1976), minimizes the potential for abuse and forum-shopping.[7] See, *Rintala v. Shoemaker*, 362 F.Supp. 1044, 1056 (D.Minn.1973). Again, we note that the trial court in its discretion can always grant a motion to dismiss on the grounds of forum non-conveniens, should the defendant's burden outweigh the plaintiff's interest in a Minnesota forum and other relevant factors. 245 N.W.2d 630.

We view as relevant the relationship between the defending parties, the litigation, and the forum state. It cannot be said that Minnesota lacks such minimally-requisite "contacts, ties or relations" to those defending parties as to offend the requirements of due process. In view of our consistent policies of providing a forum to residents of this state and extending our jurisdiction to the maximum limits consistent with due process, we decline to reverse our prior decision.

Accordingly, the order of the district court is affirmed.

OTIS, Justice (dissenting).

The inference to be drawn from this remand is not, in my opinion, that we are free to distinguish *Shaffer* and reinstate the judgment vacated by the Supreme Court. As I construe it, we are simply afforded an opportunity to revise our decision to conform to *Shaffer* on the assumption we would have reached a different conclusion had *Shaffer* been decided when we wrote *Savchuk*. Any other inference would lead to the unlikely conclusion that the Supreme Court was merely delegating to us its responsibility to resolve a difficult constitutional question.

Three specific rules recognized in *Shaffer* dispose of the jurisdictional issue here presented.

*First.* A forum state acquires no jurisdiction either in rem or in personam merely by the location in that state of property owned by defendant, unless such property is the subject of the litigation. Otherwise it is available only to satisfy a judgment. 433 U.S. 210–13, 97 S.Ct. 2583–84, 53 L.Ed.2d 701–03.

*Second.* In order to obtain either in rem or in personam jurisdiction the *defendant* must have certain minimum contacts with the forum state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" 433 U.S. 203, 97 S.Ct. 2580, 53 L.Ed.2d 697.

*Third.* It is the relationship among the defendant, the forum, and the litigation which is the basis for jurisdiction over a nonresident, not their relationship with the *plaintiff.* 433 U.S. 208–09, 97 S.Ct. 2582–83, 53 L.Ed.2d 700–01.

1. The majority holds that while the stock sequestered in *Shaffer* "was completely unrelated to the plaintiff's cause of action" the State Farm's obligation to defend and indemnify is "inevitably the focus" in this litigation and determines "the rights and obligations of the insurer, the insured, and practically speaking, the victim." However, this is not the test of jurisdiction, I submit.

Under the explicit holding of *Shaffer,* whether or not State Farm's contingent liability is a property right is wholly immaterial unless it is the subject matter of the litigation. There is no dispute as to the amount or scope of coverage under the policy. It is no more the subject of the litigation than would be a bank account available

---

7. Although Jeffrey Savchuk was a resident of Indiana at the time of the accident, Savchuk, then 19 years old, accompanied his parents in their move to Minnesota six months later. He has established and continued residency; we find no suggestion of forum-shopping in the record.

in Minnesota to satisfy the judgment. Absent a controversy involving the policy which is justiciable in Minnesota, the mere happenstance of an asset such as insurance being available to satisfy a judgment no longer confers in rem jurisdiction. In other words, the fact defendant is financially responsible in Minnesota is not enough without some other "contacts, ties, or relations" with the state as defined in *International Shoe v. Washington.*

2. A policy of providing a forum to residents of this state, extending our jurisdiction to the maximum limits consistent with due process is relied on by the majority. This is certainly the legislative intent and one with which I have no quarrel. The problem is that the majority stresses the forum's relationship with the plaintiff, whereas the constitutional test is the contact of the defendant with the forum.

The majority leans on note 37 in *Shaffer* for the proposition that the unavailability to plaintiff of any other forum is an important factor in acquiring jurisdiction over a nonresident defendant. That note, however, gives no support for such a rule. It merely states "This case does not raise, and we therefore do not consider, the question whether the presence of a defendant's property in a State is a sufficient basis for jurisdiction when no other forum is available to the plaintiff." 433 U.S. 211, 97 S.Ct. 2584, 53 L.Ed.2d 702, n. 37. Nor can I agree that "Minnesota's legitimate interest in facilitating recoveries for resident plaintiffs not only requires provision of a local forum but may override traditional choice of law analysis." The *Schwartz* case, cited in reliance for that rule, must be read in the context of *Shaffer,* now the governing law. No mention is made in *Shaffer* of the relevance of "minimum contacts" between plaintiff and the forum as modifying the rules set forth in *International Shoe.*[1]

3. This is an action for personal injuries and not a declaratory judgment suit to construe a liability policy. As in *Shaffer* the plaintiff did not allege and does not now claim that defendant ever set foot in Minnesota. He does not identify any act related to his cause of action as having taken place in Minnesota. The issue of in personam jurisdiction was extensively discussed in *Hanson v. Denckla,* 357 U.S. 235, 250–55, 78 S.Ct. 1228, 1238–40, 2 L.Ed.2d 1283, 1296–98 (1958). In that case the United States Supreme Court affirmed the decision of a Delaware court refusing to give full faith and credit to a Florida probate proceeding on the ground the Florida court failed to have jurisdiction over a Delaware trustee holding property which was the subject of the Florida probate proceedings. In affirming the decision of the Delaware court the Supreme Court made these observations:

"As technological progress has increased the flow of commerce between States, the need for jurisdiction over nonresidents has undergone a similar increase. At the same time, progress in communications and transportation has made the defense of a suit in a foreign tribunal less burdensome. In response to these changes, the requirements for personal jurisdiction over nonresidents have evolved from the rigid rule of *Pennoyer v. Neff,* 95 U.S. 714, 24 L.Ed. 565 to the flexible standard of *International Shoe Co. v. Washington,* 326 U.S. 310; 66 S.Ct. 154, 90 L.Ed. 95. But it is a mistake to assume that this trend heralds the eventual demise of all restrictions on the personal jurisdiction of state courts. * * * Those restrictions are more than a guarantee of immunity from inconvenient or distant litigation. They are a consequence of territorial limitations on the power of the respective States. However, minimal the burden of defending in a foreign tribunal, a defendant may not be called upon to do so unless he has had the 'minimal contacts' with that State that are a prerequisite to its exercise of power over him." 357 U.S. 250–51, 78 S.Ct. 1238, 2 L.Ed.2d 1296.

---

1. In *Shaffer* both the plaintiff and the defendants were nonresidents of the forum.

The court stressed the fact that the trust agreement was executed in Delaware and the settlor was domiciled at that time in Pennsylvania and did not become domiciled in Florida until some years later. The court reached the following conclusion:

"* * * The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State. The application of that rule will vary with the quality and nature of the defendant's activity, but it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." 357 U.S. 253, 78 S.Ct. 1239–40, 2 L.Ed.2d 1298.

\* \* \* \* \* \*

"It is urged that because the settlor and most of the appointees and beneficiaries were domiciled in Florida the courts of that State should be able to exercise personal jurisdiction over the nonresident trustees. This is a non-sequitur." 357 U.S. 254, 78 S.Ct. 1240, 2 L.Ed.2d 1298.

\* \* \* \* \* \*

"* * * It does not acquire that jurisdiction by being the 'center of gravity' of the controversy, or the most convenient location for litigation. The issue is personal jurisdiction, not choice of law. It is resolved in this case by considering the acts of the trustee. As we have indicated, they are insufficient to sustain the jurisdiction." 357 U.S. 254, 78 S.Ct. 1240, 2 L.Ed.2d 1298.

4. When plaintiff was injured, he and defendant were both Indiana residents, driving on an Indiana highway in a car registered in Indiana and insured in Indiana by a policy written in that state. The record discloses no relationship between defendant and the State of Minnesota. The fact that his insurer also does business in Minnesota is not, of course, attributable to any activity on the part of defendant. To paraphrase the words of Mr. Justice Marshall in *Shaffer,* defendant has simply had nothing to do with the State of Minnesota and had no reason to expect to be haled before a Minnesota court. By acquiring an insurance policy with State Farm he did not surrender his right to be brought to judgment only in a state with which he had minimum contacts. Mr. Justice Stevens' comments in his concurring opinion apply with equal force to the role of defendant's liability insurance in this case:

"One who purchases shares of stock on the open market can hardly be expected to know that he has thereby become subject to suit in a forum remote from his residence and unrelated to the transaction. * * * If its procedure were upheld, Delaware would, in effect, impose a duty of inquiry on every purchaser of securities in the national market. For unless the purchaser ascertains both the state of incorporation of the company whose shares he is buying, and also the idiosyncrasies of its law, he may be assuming an unknown risk of litigation." 433 U.S. 218–19, 97 S.Ct. 2587–88, 53 L.Ed.2d 706–07.

*Shaffer* reiterates the rule laid down in *International Shoe* and applies it to in rem jurisdiction:

"Whether due process is satisfied must depend rather upon the quality and nature of the activity in relation to the fair and orderly administration of the laws which it was the purpose of the due process clause to insure. That clause does not contemplate that a state may make binding a judgment in personam against an individual or corporate defendant with which the state has no contacts, ties, or relations." 326 U.S. 319, 66 S.Ct. 160, 90 L.Ed.2d 104.

Defendant himself, it is conceded, has not simply had minimum contacts with Minnesota. He has had no contacts with Minnesota. Under such circumstances it is not my notion of fair and orderly administra-

tion of justice to require a citizen of Indiana, because he carried liability insurance, to come to Minnesota to defend himself against the claims of another Indiana citizen who has had no contact with this state until his parents elected for undisclosed reasons to make Minnesota his residence. As was noted in the prior dissent:

> "Plaintiff's statement of the case indicates that all of the witnesses and records, as well as a treating physician, are located in Indiana, except for plaintiff's family and two Minnesota physicians who, presumably, treated him after he moved to Minnesota."

Minn., 245 N.W.2d 624, 633 n. 11 (1976).

Our long-arm statute is designed essentially to give redress to bona fide citizens of Minnesota who have suffered a wrong by the harmful intrusion of a nonresident into this jurisdiction. It is reasonable to expect nonresidents who do business here or who otherwise enjoy the privileges and protection of our laws to respond in our courts for injury caused citizens of this state by virtue of their activities. However, where, as here, the injury occurred in a foreign state at a time when Minnesota had no connection with either the parties or the cause of action, I fail to see the logic or the beneficial public policy of encouraging after-the-fact forum shopping to secure retroactive jurisdiction in this state.

Accordingly I would reverse.

ROGOSHESKE, Justice (dissenting).

I join in the dissent of Mr. Justice Otis.

PETERSON, Justice (dissenting).

I join in the dissent of Mr. Justice Otis.